Argued March 9, reversed and remanded March 28, 1978

# YARTZOFF, *Appellant,*
*v.*
# DEMOCRAT-HERALD PUBLISHING CO., INC.,
*Respondent.*
## (TC 49362, SC 25400)
### 576 P2d 356

Joseph Morray, Corvallis, argued the cause and filed a brief for appellant.

James C. Goode, of Goode, Goode, Decker & Beckham, P.C., Albany, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue and Linde, Justices, and Thornton, Justice Pro Tempore.

TONGUE, J.

**TONGUE, J.**

This is an action by an employee against her employer for damages for wrongful discharge. Plaintiff appeals from a summary judgment for defendant. We reverse.

Plaintiff's second amended complaint alleged that on January 24, 1976, she was hired by defendant as a proofreader; that the terms of her employment were set forth in a letter from defendant's production manager, dated January 26, 1976, and in a "handbook for new employees" delivered to her on or about the same date which stated in part as follows:

"Initial Probationary Period: Each new employe will be expected to work under probation for a minimum of three months and a maximum of six months. During this period, the new employe will be encouraged to learn his job and become a member of the Democrat-Herald team. However, if he cannot properly handle his job or cannot become a productive member of the team, he can be terminated at any time during this period.

"* * * * *

"Termination: The Democrat-Herald is committed to a policy to make every effort to be as fair and considerate as possible in the matter of terminating employes. When an employe's work is unsatisfactory because of lack of ability or failure to fulfill the requirements of his position, he will be counseled about the problem. Department heads have the responsibility to work diligently with such an employe to rectify the situation. If the problem is one of a mismatch between the employe's abilities and the position, an effort will be made to find a more suitable position in which to demonstrate his abilities to succeed. If such action fails, the employe will be advised on the need for termination in ample time to permit him to adjust to the situation. In most cases, the following procedure will take place:

"1. The employe will receive a letter from his department head detailing the problem, and suggesting ways to solve it.

"2. If the problem persists, the employe will be sent home for one day with pay.

[ 653 ]

"3.  If the problem continues, the employe can then be terminated.

"An exception is made in the case of gross misconduct where immediate action to terminate may be taken."

The complaint also alleges that on April 19, 1976, she was discharged without warning and without cause despite the fact that she had "demonstrated her ability to handle her job and to become a productive member of the team." Attached to the complaint as an exhibit was a copy of the letter of January 26, 1976, stating, among other things, her duties and rate of pay and that "[n]ormal probationary period * * * is 3 months."

Defendant's motion for summary judgment was supported by the affidavit of its attorney that:

"According to Plaintiff's second amended complaint, and the other undisputed facts of the case, it is hereby represented that the evidence will be that on January 24, 1976, Plaintiff was hired to work as a proof reader under a probationary period of time of three to six months.

"Plaintiff did not have an employment contract as the terms of hiring were verbal. Defendant had printed and did give to Plaintiff, two days or more after she was hired, an informational handbook. Portions of that publication are quoted in Plaintiff's second amended complaint.

"Defendant discharged Plaintiff on April 19, 1976, 81 days after her initial employment and less than three months thereafter."

Plaintiff then filed an affidavit in opposition to defendant's motion stating that:

"1.  * * * * *

"2.  On January 24, 1976, Thomas Stratton verbally agreed to hire me and I verbally agreed to work for the Albany Democrat-Herald as proofreader. The terms of our agreement were those stated in the letter of January 26, 1976 from Thomas Stratton to me, a copy of which letter is attached to the Second Amended Complaint as Exhibit 'A'.

"3.  On or about January 26, 1976 I received from Thomas Stratton at the Albany Democrat-Herald office,

[ 654 ]

the printed publication entitled 'Let's Get Acquainted: A Policy Handbook For New Employees: Albany Democrat-Herald' containing the excerpts set forth in paragraph II of my Second Amended Complaint.

"4. I began working for defendant on January 26, 1976 and continued working until I was discharged on April 19, 1976 without cause, by Thomas Stratton.

"5. Throughout my employment I performed my duties in a manner that demonstrated my ability to handle my job and to become a productive member of the team of the Albany Democrat-Herald.

"6. At no time prior to my discharge on April 19, 1976 was I given any warning that my work was considered not satisfactory and that termination was being considered.

"7. As a result of defendant's breach of our agreement I have suffered damages in the form of lost wages in the amount of $2,600.00 and incidental expenses while seeking other employment in the amount of $100.00."

■ In considering plaintiff's contention that on this record the trial court erred in entering a summary judgment for defendant we start with the recognized rule that the entry of a summary judgment is proper only when there is no genuine issue as to any material fact and that in an appeal from a summary judgment the record must be reviewed in the light most favorable to the party opposing the motion. *See* ORS 18.105(3) and *Grove Brick v. Strickland,* 277 Or 81, at 87-88, 559 P2d 502 (1977), and authorities cited therein. As stated in 6 Moore's Federal Practice 56-469, ¶ 56.15 (1976):

"* * * in ruling on the motion all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion [citing many cases]."

■ We also start with the recognized rule that generally, in the absence of a contract or statute to the contrary, an employer may discharge an employee at any time and for any cause. *Nees v. Hocks,* 272 Or 210, 216, 536 P2d 512 (1975).

[ 655 ]

Defendant first contends that the letter of January 26, 1976, stating only that the "normal probationary period" was three months, did not limit defendant's right to discharge plaintiff at any time during that period and for any cause. Taking that letter alone, and in the absence of any other evidence, we might not disagree. It is quite possible, however, that at the time of trial evidence might be offered as to the meaning of the words "normal probationary period," as understood and intended by the parties, or to show that the intended meaning of those terms was as set forth in the handbook. In any event, the disposition of this contention is not decisive, for reasons that will appear.

Defendant next contends that the statements in the handbook relied upon by plaintiff also do not impose any such limitation because it appears from plaintiff's affidavit that "[t]he terms of our agreement were those stated in the letter of January 26, 1977 [sic]" which, as previously held, did not limit defendant's right of discharge, and made no reference to the handbook. We disagree with that contention.

As previously noted, plaintiff's affidavit goes on to state that "on or about" the same day, January 27th, she also received the "handbook" containing the above-quoted statement. As also previously stated, we must review the record in the light most favorable to plaintiff. Viewed in that light, we believe that if this case were submitted to a jury, it could reasonably infer from the facts stated in plaintiff's affidavit, when taken as a whole, that these statements in the handbook were intended and considered by both parties to be a part of the terms of plaintiff's original contract of employment.

Defendant next contends that because the handbook was not received by plaintiff until two days after she started to work, these statements in the handbook were not binding upon defendant as a matter of

contract because, at most, they constituted a modification of the terms of the original contract of employment for which plaintiff has pleaded was no valid consideration. Again, we disagree.

First of all, as previously stated, we believe that a jury could properly find that these statements in the handbook were a part of the original contract of employment, rather than a modification of that contract, for which new consideration may be required. But even if the handbook statements must be held to have been a modification of the terms of the original contract of employment, there was valid consideration for such a "modification" under the facts as stated in plaintiff's affidavit. This follows because it appears from these facts that at that time the plaintiff was not employed for a definite period of time, but was free to leave her employment, and that she then continued her employment. It follows that her continued employment after receiving the handbook provided sufficient consideration for any such modification of the original contract of employment. *See* 1A Corbin on Contracts 122, § 175 (1963). *Cf. Walker v. American Optical Corp.,* 265 Or 327, 330, 509 P2d 439 (1973), and 1A Corbin, *supra,* 18, 184, §§ 153, 192.

Defendant's final contention on the matter of the summary judgment is that, in any event, these statements in the handbook did not limit defendant's right to discharge plaintiff for any reason, whether with or without cause, because it did not "specify that a probationary employee may be terminated only for cause." More specifically, defendant contends that:

> "* * * [D]efendant at no time intended to guarantee continued employment while a probationary status was maintained and * * * defendant did not restrict termination to cause. The phrase 'cannot become a productive member of the team' indicates defendant's desire to retain the option at will. It was to be a subjective evaluation by the defendant encompassing not only work product but personality and compatability. If the handbook is part of an agreement between the parties, by its

[ 657 ]

own terms, cause is not required for the termination of a probationary employee."

We also disagree with that contention.

As previously noted, the handbook stated, among other things, that:

"* * * Each new employe will be expected to work under probation for a minimum of three months and a maximum of six months. * * * [I]f he cannot properly handle his job or cannot become a productive member of the team, he can be terminated at any time during this period.

"* * * * *

"Termination: * * * When an employe's work is unsatisfactory because of lack of ability or failure to fulfill the requirements of his position, he will be counseled about the problem. * * * In most cases, the following procedure will take place:

"1. The employe will receive a letter from his department head detailing the problem, and suggesting ways to solve it.

"2. If the problem persists, the employe will be sent home for one day with pay.

"3. If the problem continues, the employe can then be terminated.

"An exception is made in the case of gross misconduct where immediate action to terminate may be taken."

One possible interpretation of these provisions is that there would be a probationary period of employment for plaintiff of at least three months; that during that period, in the absence of "gross misconduct" (which apparently is not contended by defendant, at least under the facts stated in its affidavit) plaintiff would not be discharged unless her employer had reason to believe in good faith she could not "properly handle her job" or "become a productive member of the team."

It must be noted, however, that only portions of the handbook are before this court on appeal from defendant's motion for summary judgment and that the possible consideration of parol evidence as an aid in

the interpretation of provisions which may be claimed to be ambiguous is also not before this court. For the purposes of a motion for summary judgment, however, we hold that these statements of fact, as set forth in plaintiff's affidavit, are sufficient to require the denial of that motion.

For all of these reasons, we hold that the trial court erred in entering summary judgment in favor of defendant. We do not mean, however, by anything that has been said in this opinion, to express views as to the merits of the case. We hold only that plaintiff is entitled to go to trial on the allegations of her second amended complaint.[1]

Reversed and remanded.

---

[1]We also hold that plaintiff's remaining assignments of error have no merit. This being an action for breach of contract, the trial court did not err in striking plaintiff's claim for punitive damages, at least under the allegations of plaintiff's complaint. *Weaver v. Austin,* 184 Or 586, 600, 200 P2d 593 (1948). *Cf. Belleville v. Davis,* 262 Or 387, 405, 498 P2d 744 (1972). Similarly, this being an action for breach of contract, the trial court did not err in striking plaintiff's allegations that "defendant's actions have caused plaintiff great mental and physical distress," such allegations being insufficient to satisfy the requirements of the rule as stated in *Farris v. U.S. Fidelity & Guaranty,* 273 Or 628, 638, 542 P2d 1031 (1975). *See also* Restatement of Contracts § 341 (1932). Finally, the trial court did not err in striking the words "with malice" as a conclusion of law, in the absence of other alleged facts. *See Holden v. Pioneer Broadcasting Co. et al,* 228 Or 405, 418, 365 P2d 845 (1961).