Richard S. KAY, Plaintiff,

v.

NORTH LINCOLN HOSPITAL DISTRICT and James A. Mattes; Corrine Smith, Tom Morgan, Robert Stroed, John Kiefer, and Basil Saunders, each in their individual and official capacities, Defendants.

Civ. No. 81–6102–E.

United States District Court,
D. Oregon.

Nov. 5, 1982.

Henry H. Drummonds, Kulongoski, Heid, Durham & Drummonds, Portland, Or., for plaintiff.

George H. Fraser, Susan P. Graber, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for defendants.

## OPINION

REDDEN, District Judge:

This is a suit brought under § 1983, with pendent state claims for breach of contract, unlawful employment practices and defamation. The defamation claim has been dismissed for failure to timely file during the tort claim notice period under the Oregon Tort Claims Act, O.R.S. 30.275. The case is now before the court on defendants' motion for summary judgment.

FACTS

The plaintiff, Richard Kay, was employed in North Lincoln Hospital as its chief x-ray technician. Off duty, he injured his arm playing volleyball. He claims that the next day, at work, he reinjured the same arm lifting a patient. He filed a claim for workers' compensation, admitting that the arm had originally been injured in the volleyball game. He did allege that the subsequent reinjury was work-related. Several weeks after the incident his superiors informed him that the workers' compensation claim was under investigation as a fraudulent claim. Kay protested his innocence, and pointed out that he had been forthright in indicating that the first injury was not work-related. The following day Kay was fired. A notice was posted by the hospital administration on a public bulletin board at the hospital, which stated: "Mr. Dick Kay was discharged today for a gross violation of proper conduct. Needless to say, this action is an unpleasant one for everyone."

Prior to the discharge and posting, Kay had two interviews with the hospital's administrator and personnel manager. During the interviews they informed Kay that the incident was a serious one and could lead to his dismissal. They requested his written account of the incident, which he provided. There were no other hearings prior to termination.

Following termination, a hearing was held by the state Employment Division on Kay's application for unemployment benefits. The Division's hearing officer concluded that Kay had not lied or intentionally misrepresented his workers' compensation claim. Later, after this suit was filed, a hearing was held by the State Accident Insurance Fund (SAIF) on the workers' compensation claim. That hearings officer denied benefits for the injury.

DISCUSSION

The defendants' motion for summary judgment will be granted only if there are no material issues of fact in dispute, or if, viewing the facts and the inferences which may be drawn therefrom in the light most favorable to the party moved against, the movant is clearly entitled to judgment as a matter of law. *Gaines v. Haughton,* 645 F.2d 761, 769 (9th Cir.1981).

Judge Hogan granted summary judgment in favor of the directors of the district, and that decision was not appealed.

The defendants urge that summary judgment should be granted for the hospital district. I agree with Judge Hogan's ruling, and deny the hospital district's motion for summary judgment.

■ The defendants argue that the district can only be liable on a theory of *respondeat superior,* which is not available against municipalities under § 1983. *Monell v. New York Dept. of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Heath v. Redbud Hosp. Dist.,* 620 F.2d 207, 209 (9th Cir.1980). However, defendants misinterpret the teaching of *Monell.* Under *Monell,* a municipality, or other local governmental unit, is liable under § 1983 for the torts of its employees where

the employees act in "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* 436 U.S. at 694, 98 S.Ct. at 2037. Kay's discharge was pursuant to the hospital district's policy of immediate discharge of those deemed guilty of "gross violation[s] of conduct." North Lincoln Hospital Personnel Policies, Aug. 20, 1979, ¶¶ 10.27–10.28. Moreover, the discharge was effected by the hospital's administrator, who is a person "whose edicts and acts may fairly be said to represent official policy."

The motion for summary judgment was properly denied. *See Garris v. Rowland,* 678 F.2d 1264 (5th Cir.1982) (Departmental policy of local police force not to recall an arrest warrant where investigation shows charges are unfounded results in § 1983 liability); *see also Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (Discharge of police chief by city manager, *held* municipality not immune from suit under § 1983 although *respondeat superior* problem not discussed in opinion). *Heath v. Redbud Hosp. Dist., supra,* is not to the contrary. In *Redbud* there were no allegations of unconstitutional action undertaken to implement or execute the policy of that hospital district, nor would the facts support such an allegation. *Id.* at 209. Such an allegation, however, would "bring the case within *Monell's* requirements." *Id.*

■ The defendants next argue that the hospital district's personnel policies failed to create a "property interest" in employment sufficient to invoke § 1983 protections, including the right to a pre-termination hearing. I agree with Judge Hogan's analysis. When an employment contract does not specify a term, an employee may establish the existence of a property interest in continued employment by showing a reasonable expectation based upon sources such as state law, rules or regulations for discharge, or an express or implied promise of continued employment. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92

S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such a property interest is then entitled to constitutional protection. The Oregon Supreme Court in *Yartzoff v. Democrat-Herald,* 281 Or. 651, 576 P.2d 356 (1978), examining personnel regulations analogous to the regulations in the present case, held that the regulations could form a part of the employment contract. The Oregon Supreme Court's decision was even more noteworthy in that the plaintiff in *Yartzoff* was a "probationary employee," but could nevertheless be entitled to continued employment absent a demonstration of "cause" by the employer. 281 Or. at 658, 576 P.2d 356. State law, then, accords to this plaintiff, who is *not* a probationary employee, equivalent rights to a demonstration of "cause" before discharge. Such a right to continued employment is indeed a "property interest" which *Roth* and its progeny will protect against summary action.

I do agree with defendants, however, that a previous decision of my own, *Robeson v. Central Oregon District Hospital,* Civ. No. 80–800 (D.Or.1981) could be read to support their position. In that case I relied upon *Papadopolous v. State Board,* 14 Or.App. 130, 511 P.2d 854 (1973), and held that contract rights, as opposed to statutory rights, could not create a "tenure" expectation in a public employee sufficient to require a due process hearing. *Papadopolous* has been cited with approval by the Ninth Circuit in *Davis v. Oregon State University,* 591 F.2d 493, 496 (9th Cir.1978), and *Seitz v. Clark,* 524 F.2d 876 (9th Cir.1975), although not for the proposition that due process rights are dependent on statutory as opposed to contract rights. In both cases the employees apparently relied upon oral assurances in the face of regulations which established that they served "at will." None of these cases teach that state law does not recognize that personnel regulations may become a part of the employment contract. I expressly disavow my decision in *Robeson,* and hold that when personnel regulations may be fairly interpreted to give a right to continued employment, except for cause discharge, a property interest in employ-

ment may arise requiring due process protection, *see Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. The portion of the hospital's personnel policies which I rely upon in finding such a property interest reads as follows:

1. In order to improve hospital operation and employee morale, corrective actions should be:

   a. based on:

      1) specific, just causes:

      a) incompetence . . .

      b) negligence . . .

      c) misconduct . . .

North Lincoln Hospital Personnel Policies at 10.26.

Clearly, these regulations provide employees with an expectation that they will be terminated only for "specific, just" cause. The personnel policies also provide for "prompt hearing of protests and appeals." *Id.* at 10.26. I hold as a matter of law that these regulations may give rise to an expectation of continued employment sufficient to invoke a pretermination hearing.

■ The publication of the notice of Kay's termination, coupled with the allegation that he had been guilty of a "gross violation of proper conduct," infringed Kay's *liberty* interest in employment as a stigmatizing charge prior to an opportunity to refute that charge. *Stretten v. Wadsworth Veteran's Hospital,* 537 F.2d 361, 366 (9th Cir.1976). While the charge of "gross violation of proper conduct" is vague and ambiguous, it is clear that Kay was discharged for what the hospital believed was an act involving moral turpitude. The very vagueness of the charge, which makes it impossible to rebut and incites speculation, constitutes the "label of infamy," *Id.* at 366, which may not be attached to a discharged employee without minimum due process. I therefore agree that a liberty interest was demonstrated.

■ The defendants argue that the SAIF hearing, which held that the plaintiff was not entitled to workers' compensation bene-

fits, collaterally estops plaintiff here. I disagree. That hearing merely established that the plaintiff was not entitled to workers' compensation benefits. It was the *unemployment* hearings which decided whether the plaintiff lied in making his claim. That decision was for plaintiff. Employment Division proceedings, however, should not have collateral estoppel effect, *Lewis v. IBM,* 393 F.Supp. 305 (D.Or.1974). I also note that neither the SAIF nor the Employment Division decision has been appealed so that "full faith and credit" would attach under 28 U.S.C. § 1738, *cf. Kremer v. Chemical Const. Corp.,* —— U.S. ——, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). I conclude that neither hearing collaterally estops either party.

Judge Hogan also opined that Mattes, the plaintiff's supervisor, was entitled to summary judgment on the grounds that his termination of the plaintiff was in "good faith." I agree that the information before Mattes at the time he made his decision to terminate conflicted with the information provided by the plaintiff, and that Mattes could reasonably choose to terminate on the basis of the record as it then stood. However, I am troubled by the fact that Mattes' action was precipitate. Kay was confronted with the charges on one day, and discharged the next, when he refused to resign. There was no reason for such haste; action could have been delayed to allow for a hearing at which Kay could call witnesses who would support his position. The alleged act had occurred some weeks before; the investigation had apparently proceeded at a leisurely pace until the day plaintiff was asked to explain his position. This is not a case where the interest in patient safety would excuse precipitate action, for there was no allegation that Kay was incompetent. *Cf. Stretten, supra,* at 369 n. 20.

Mattes, who knew of the hospital's personnel policies, did not convene a hearing or allow Kay the opportunity to confront witnesses or produce his own. There was apparently no "appeal" as provided by the regulations and plaintiff's counsel stated that such an appeal has never been granted, although desired by plaintiff.

The fact that Mattes may have had a "good faith" belief that his *termination* decision was correct does not establish that his decision to *publicize* the decision, with the "gross violation" language, was taken in good faith. The plaintiff in his defamation cause of action, which has been dismissed for untimely filing, alleged that the notice was defamatory and published "maliciously." Complaint p. 11.

■ Summary judgment is inappropriate here, because "contradictory inferences may be drawn from [the] facts," and "motive and intent play a leading role in a determination of liability." *Sherman Oaks Medical Center v. Carpenters Local 1936,* 680 F.2d 594, 598 (9th Cir.1982). Mattes' motion for summary judgment on the grounds of "good faith" will be denied. In any case, the good faith of Mattes would not preclude suit against the hospital district. *Owen v. City of Independence, supra,* 100 S.Ct. at 1417–8; *see also Smiddy v. Varney,* 665 F.2d 261, 267 (9th Cir.1981).

The defendants also argue error in failing to apply *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and in granting summary judgment for the defendants. *Parratt* held that a prisoner could not bring an action under § 1983 for the negligent loss of his property by a jailer. However, the Ninth Circuit has expressly limited the *Parratt* holding to property claims, rather than the liberty claims at issue here. *Wakinekona v. Olin,* 664 F.2d 708, 715 (9th Cir.1981). Moreover, even if only property claims were at issue in this case, *Parratt* would not extend to imply an "exhaustion requirement" for this action. *Id.* at 715 n. 1. I agree that the defendants' motion for summary judgment on this ground is not well taken.

The defendants' final argument with respect to the § 1983 claim is that Kay in fact received minimum due process. The Ninth Circuit has specifically examined the requirements of minimum due process in the context of a hospital's termination decision in *Stretten v. Wadsworth Veteran's Hospi-*

**532**

*tal, supra,* and I adopt that analysis. In *Stretten,* the employee was afforded a hearing before the three-member Review Board. He was permitted to confront adverse witnesses. He had been informed, approximately three months previously, that his termination would be sought, and he was provided with the reasons why his superiors felt he should be terminated. In *Stretten* the employee was in fact accompanied by an attorney at the hearing. *Id.* at 363.

The employee in *Stretten* thus received the essentials of minimum due process: notice of his deficiencies, an opportunity to examine the evidence against him, and the right to present his side of the story to a reasonably detached and neutral decision-maker. "These procedures will ensure that all relevant data are before the decision-maker and will allow any reviewing court to judge whether the decision-maker acted in bad faith or arbitrarily and capriciously." *Id.* at 369.

It is clear that due process *minima* were not complied with in this case before the termination. Kay was summoned before his superior with no notice of the charges against him. He was told to write out his version of the events, but was not allowed to confront the evidence upon which his superiors relied. The next day he was fired and the notice was posted.

The requirement for the observance of constitutional standards is demonstrated by the results of the Employment Division hearing, which cleared him of a charge of the fraudulent filing of a compensation claim. *Stretten* at 368; *Matthews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The defendants' motion for summary judgment against the § 1983 claim will be denied.

Since the court has jurisdiction over a substantial federal claim, it will retain pendent jurisdiction over the state claims of breach of contract and retaliatory termination for the filing of a compensation claim under O.R.S. 659.410. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).