**Jerry L. ANDERSON, Plaintiff,**

v.

**CENTRAL POINT SCHOOL DISTRICT NO. 6, a municipal corporation, Defendant.**

**Rod GROSHONG, in his individual and official capacities, Defendant and Counter-Claimant,**

v.

**OREGON EDUCATION ASSOCIATION, Defendant as to the Counterclaim.**

**Civ. No. 81–6155–ME–RE.**

United States District Court, D. Oregon.

Nov. 16, 1982.

Robert D. Durham, Kulongoski, Heid, Durham & Drummonds, Eugene, Or., for plaintiff and defendant as to the counterclaim.

Mark C. McClanahan, Jeffrey B. Millner, Miller, Nash, Yerke, Wiener & Hager, Portland, Or., for defendant and counter-claimant.

## OPINION

REDDEN, District Judge:

### I. BACKGROUND

Plaintiff Jerry L. Anderson sues to redress defendants' alleged violation of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution and under Article I, Sections 8 and 20 of the Oregon Constitution. He seeks declaratory and injunctive relief, damages and attorneys' fees. Jurisdiction is based on 28 U.S.C. §§ 1331, 1343 and 2201 and 42 U.S.C. § 1983 (1981). Plaintiff urges pendent jurisdiction over the state constitutional claims.

On February 11, 1981 plaintiff was a teacher-coach employed by defendant school district. Defendant Central Point School District No. 6 is a municipal corporation organized under Oregon law. Codefendant Rod Groshong was superintendent of the district. The Oregon Education Association is joined as a defendant for the purpose of a counterclaim filed by Groshong and the Central Point School District. Plaintiff

alleges that defendants denied his civil rights by relieving him of his coaching duties as a disciplinary action based upon his writing and sending a February 11, 1981 letter to the members of the District school board. The letter contained plaintiff's suggestions concerning the athletic policies and programs of the district.

In a subsequent March 3, 1981 letter, defendant Groshong [1] informed Anderson that Anderson's letter violated Board policy, Oregon Administrative Rules and the National Education Association Committee on Professional Ethics Code. Groshong informed Anderson that "it is my considered opinion that athletics at Crater High School are not benefited with you as a member of the coaching ranks. Hereafter, you will not be assigned a coaching role in School District 6." Exhibit E, Pretrial Order.

Plaintiff filed this action April 24, 1981 and moved for a preliminary injunction. On June 1, 1981, Judge Hogan granted the preliminary injunction ordering defendants to "cease and desist from according any weight to the fact that plaintiff sent a letter on February 11, 1981, to the district school board in any coaching decision, . . . ."

On May 12, 1982, Judge Hogan granted defendant Groshong leave to file an omitted counterclaim and to add the Oregon Education Association (OEA) as a defendant. The counterclaim alleges a common law tort of abuse of process by plaintiff and OEA. On June 24, 1981, Anderson and OEA moved this court to abstain from exercising jurisdiction over the counterclaim, or, in the alternative, to dismiss the counterclaim under Fed.R.Civ.P. 12(b)(6).

On September 17, 1982, plaintiff moved for partial summary judgment on the issue of the defendants' liability. On September 20, 1982, the defendants moved for partial summary judgment on the issue of damages claimed by plaintiff as well as on the issue of Groshong's good faith immunity defense. Defendants also moved the court to abstain from exercising pendent jurisdiction over plaintiff's claims under the Oregon Constitution. Finally, defendants filed motions in limine to prohibit plaintiff from making any reference to the preliminary injunction, the pending counterclaim and the amendment to the District's channels policy. I had earlier advised the parties that the counterclaim, if not dismissed, would be bifurcated for trial purposes.

## II. DISCUSSION

### A. *Plaintiff's Motion to Abstain or Dismiss*

Plaintiff Anderson and counterclaim defendant OEA move the court to decline to exercise pendent jurisdiction over the counterclaim. In the alternative, they moved to dismiss the counterclaim for failure to state a claim upon which relief can be granted.

Defendant Groshong counters by contending that the counterclaim is compulsory under Fed.R.Civ.P. 13(a) and, therefore, ancillary, not pendent, jurisdiction applies. He further argues that the 12(b)(6) motion should be denied because he has alleged the necessary elements of the tort of abuse of process.

I conclude that the counterclaim is permissive, rather than compulsory. The rule on compulsory counterclaims provides that a party shall state, as a counterclaim, any claim "the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a). The term "transaction" is construed liberally to mean claims that are logically related. *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). I hold that the abuse of process claim is not logically related to Anderson's first amendment claim.

Anderson's claim is that he was disciplined for exercising his first amendment rights; Groshong's abuse of process claim is that Anderson's present action is not for the legitimate purpose of recovering damages, but for the collateral purpose of coercing the district into accepting a proposed collec-

tive bargaining agreement. The two claims require different proof and have different factual bases. *Bose Corp. v. Consumers Union of United States, Inc.,* 384 F.Supp. 600 (D.Mass.1974). *Accord, Cochrane v. Iowa Beef Processors,* 596 F.2d 254, 262 (8th Cir.1979), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290.

■ Permissive counterclaims, unlike compulsory counterclaims, require an independent basis of jurisdiction. I find that I have pendent jurisdiction over the counterclaim. Pendent jurisdiction, in the sense of judicial power, exists whenever there is a substantial federal claim and the relationship between that claim and the state claim "permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Pendent jurisdiction, however, is a doctrine of discretion. *Id.* Under *Gibbs,* I must consider judicial economy, convenience and fairness to the litigants. I must also determine whether joinder of the state claims with the federal cause of action will cause confusion to the trier of fact. I am also mindful of my duty to avoid rendering needless decisions on state law questions. *Id.*

■ I decline to exercise pendent jurisdiction over the counterclaim. The elements of plaintiff's § 1983 claim differ greatly from those of the tort of abuse of process. *Clark v. Lutcher,* 436 F.Supp. 1266, 1268 (M.D.Pa.1977). To prove his § 1983 claim, Anderson must show that his February 11th letter was protected activity under the first amendment, and that this protected activity was a substantial factor in the defendants' decision to discipline him. To prove his abuse of process counterclaim, Groshong must show that Anderson and OEA had an ulterior purpose and acted wilfully in the improper use of process in the regular conduct of the proceeding. *Larsen v. Credit Bureau,* 279 Or. 405, 408, 568 P.2d 657 (1977). It would be difficult for the trier of fact to keep separate the elements of the claims. In addition, while the abuse of process claim does not address the merits of plaintiff's first amendment claim, the jury might mistakenly apply some of the defendant's evidence on the counterclaim to the merits of plaintiff's claim.

Furthermore, the case law in Oregon is not completely settled as to whether special injury needs to be pled and proven in an abuse of process claim. *See Brood v. Davis,* 42 Or.App. 587, 601 P.2d 487, *reversed on other grounds,* 44 Or.App. 261, 605 P.2d 749 (1980). Partly to avoid a needless decision of state law, I decline to exercise pendent jurisdiction over the counterclaim. The counterclaim is dismissed without prejudice.[1]

### B. *Plaintiff's Motion for Partial Summary Judgment*

Anderson moves for summary judgment on the issue of defendants' liability. Specifically, plaintiff argues that defendants disciplined him for writing and sending the February 11 letter and thus, he was disciplined for exercising his first and fourteenth amendment rights. Defendants counter that Anderson was disciplined for violating the district's "channels rules" which require district employees to channel their remarks to the Board through the superintendent.

Defendants also contend that they disciplined Anderson not only for his February 11 letter, but also for other violations. In his deposition, Rod Groshong states:

There were four incidents a year ago starting with the print shop circumvention of rules, the retard incident, the Chadwick incident, and the school board mail-out. I then and now view this as a progressive discipline process.

Rod Groshong Deposition, Vol. I, p. 51 (attached to the Affidavit of Jeffrey B. Millner).

■ This case presents a classic mixed motive case. In such a case, the initial

---

1. Because of this ruling, I decline to rule on plaintiff's and OEA's alternative motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted.

burden is on plaintiff to show that the conduct was constitutionally protected and was a substantial factor in defendants' decision to discipline. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). If a plaintiff meets this burden the defendants must show, by preponderance, that they would have reached the same decision even if plaintiff had not so acted. *Id. Accord, Nicholson v. Board of Education,* 682 F.2d 858, 862 (9th Cir.1982). "Since questions of motive predominate in the inquiry about how big a role the protected behavior played in the decision, summary judgment will usually not be appropriate." *Mabey v. Reagan,* 537 F.2d 1036, 1045 (9th Cir.1976).

■ Summary judgment is appropriate, however, on the issue of whether the February 11 letter was protected activity. The facts are not in dispute and it is a question of law. The United States Supreme Court in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), provided detailed guidelines for determining whether a plaintiff's conduct is protected activity. Under these guidelines, I must balance the interests of citizen Anderson to comment upon matters of public concern, with those of the school district in providing efficient public service. Upon examination of the statements made by plaintiff Pickering, the Court concluded that the following factors are relevant: whether the maintenance of discipline by immediate supervisors would be adversely affected by plaintiff's criticism; whether plaintiff's employment relationship with the board was so personal and intimate that the public criticism would seriously undermine that relationship; whether the employment relationship demanded personal loyalty and confidence; whether plaintiff deliberately made false statements; and whether plaintiff's claims would impede his performance as a teacher or hinder the actual operation of the school beyond their "tendency to anger the board." *Id.* at 570–71, 88 S.Ct. at 1736. Furthermore, the Court found that, because the operation of the school system is of general public concern, those persons in-

volved in its operation have the right to publicly address the pertinent issues "without fear of retaliatory dismissal." *Id.* at 571–72, 88 S.Ct. at 1736.

■ Under *Pickering,* Anderson's February 11 letter is clearly within the scope of first amendment protection. Anderson does not have a close working relationship with Superintendent Groshong that requires "personal loyalty and confidence." Dr. Groshong was not Anderson's immediate supervisor; there were at least two administrators between Anderson and Groshong. Pretrial Order, p. 6, lines 8–13 and Exhibit U. The letter did not criticize the school district or the superintendent; it was not likely to disrupt the maintenance of discipline by Anderson's superiors or harmony among co-workers. *Fujiwara v. Clark,* 477 F.Supp. 822, 834 (D.Hawaii 1979). There was no physical disruption of the school board meeting; Mr. Anderson took his seat when he was told his time was up. Pretrial Order, Agreed Facts, p. 5, lines 16–19. It cannot be argued that a letter sent after the public meeting in any way disrupted that meeting or the efficient decision-making process. The statements made by plaintiff in his letter were not false, but were merely his suggestions for a better athletic program. The parties agree that the letter addressed matters of public concern. Pretrial Order, Agreed Facts, p. 6, lines 1–2. I conclude that Anderson's letter was an exercise of his first and fourteenth amendment rights to free speech and to petition his government.

I also find that the defendants disciplined Anderson, at least in part, for exercising these rights. The defendants' answer admits that Anderson's discharge "resulted in part from Plaintiff's contact with school board members . . . ." Defendants' Answer at 4. Furthermore, Groshong's letter discharging Anderson from coaching duties states "[t]his is a formal response to your mail-out to members of the Board of Directors . . . ." Pretrial Order, Exhibit E. The Agreed Facts also state that Groshong's letter was in direct response to plaintiff's letter of February 11.

If he is to prevail at trial, plaintiff must prove that the February 11 letter was a substantial factor in Groshong's decision to discipline him. If he carries this burden, the defendants must prove that they would have disciplined him even if he had not written and sent the letter. Anderson need not prove that the letter was protected activity, since I hold that it was as a matter of law. Furthermore, he is not required to prove that his protected activity played *some* role in his discharge from coaching duties, since defendants admit that it did. The question, at trial, will be: Was plaintiff's protected activity a *substantial* factor leading to the disciplinary action taken by defendants.

### Liability of the District

Plaintiff also seeks summary judgment on the liability of the district for the acts of Groshong. Plaintiff argues that when the alleged unconstitutional action is an official policy of the governmental unit, it can be held liable under § 1983 as an entity. *Monell v. New York Board of Social Service,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). This is a correct statement of the law. Since the facts on this issue are not in dispute, summary judgment is appropriate.

 The parties agree that Groshong is the chief executive and chief administrative officer of the District. Pretrial Order, Agreed Facts, p. 7, lines 11–14. Groshong is one whose "edicts or acts may fairly be said to represent official policy . . . ." *Monell, supra; Kay v. Lincoln Hospital,* 555 F.Supp. 527 (D.Or.1982). Groshong acted to implement district policy when he advised plaintiff that he would not be assigned future coaching duties. If it is found at trial that plaintiff's February 11 letter was a substantial factor in the de-

fendants' disciplining him, the district will be liable.

 Plaintiff also contends that the district, as an entity, is not entitled to immunity. Plaintiff is entitled to summary judgment on this issue. The district has no immunity under § 1983. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

### Liability of Groshong

 Finally, plaintiff contends that he is entitled to summary judgment on the issue of immunity of defendant Groshong. Plaintiff first argues that governmental officials sued in their official capacity (as distinguished from their individual capacity) are not entitled to immunity from damages in a § 1983 suit. I agree with plaintiff and conclude that Groshong is not entitled to immunity when sued in his official capacity. *Owen v. City of Independence, supra; Universal Amusement Co., Inc. v. Hofheinz,* 646 F.2d 996, 997 (5th Cir.1981).

Plaintiff does agree that Groshong is entitled to a qualified good faith immunity if he can prove objective good faith.[2] Objective good faith requires proof that Groshong's conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

I find that it was "clearly established" in March 1981, that teachers cannot be disciplined for exercising their first amendment rights. *Pickering, supra; Mabey v. Reagan,* 537 F.2d 1036, 1044 (9th Cir.1976).

Defendants argue that it was not then clearly established that teachers could not be disciplined for violating channels rules.[3]

---

**2.** As originally conceived, the qualified good faith immunity consisted of two prongs; a defendant needed to prove subjective (no malice) good faith and objective good faith. The subjective prong of this test, however, is no longer the law. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

**3.** Defendants contend that Groshong had been told by the District's attorney, Brian Mullen, that the District had a right under the *Pickering* test to enforce the channels rules. Defendants' Memorandum, p. 43. It is undisputed, however, that Groshong did not consult with the District's attorney until after the March 3 letter was sent and the District had received a reply. Groshong Deposition, Vol. I, pp. 89–90, 95;

They note that the Supreme Court in *Pickering* did not decide whether

> teachers can be required by narrowly drawn grievance procedures to submit complaints about the operation of the schools to their superiors for action thereon prior to bringing the complaints before the public.

391 U.S. at 573 n. 4, 88 S.Ct. at 1737 n. 4. Defendants' argument misses the mark. The Court has held on numerous occasions since 1968 that any law which imposes a prior restraint on the exercise of first amendment rights comes to the court "with a heavy presumption against its constitutional validity." *Vance v. Universal Amusement Co., Inc.,* 445 U.S. 308, 317, 100 S.Ct. 1156, 1162, 63 L.Ed.2d 413 (1980), *quoting Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963); *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 558, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1975); *New York Times Co. v. United States,* 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1970).

 The channels rules, which require advance notice to the superintendent of any direct message to the board, are an impermissible prior restraint. *Rosen v. Port of Portland,* 641 F.2d 1243, 1247 (9th Cir.1981). Although *Rosen* was decided two days after Groshong wrote the letter to Anderson, it is "useful in the present case to support this Court's determination that the constitutional standard was clearly established prior to [March 3, 1981]." *Fujiwara, supra,* 477 F.Supp. at 833 n. 32. *Rosen* cites *Thomas v. Collins,* 323 U.S. 516, 540, 65 S.Ct. 315, 327, 89 L.Ed. 430 (1944), for the proposition that persons desiring to exercise free speech rights may not be required to give advance notice to the state.

Defendants seek to justify the channels rules as furthering

> the significant governmental interests of conserving School Board members' time, permitting the administration the opportunity to comment on the accuracy, and

Mullen Deposition, pp. 5, 16. Dr. Groshong did not rely on advice of counsel when he wrote

> to provide supplemental information when necessary . . . .

Defendants' Memorandum, p. 36. These purported reasons, however, do not satisfy the district's burden of justification. The rules must bear a "substantial relation" to a "weighty" governmental interest. *Rosen, supra,* 641 F.2d at 1246. "The law cannot be justified merely by a showing of some legitimate governmental interest." *Id.* citing *Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976). The reasons offered in support of the channels rules, while legitimate, are certainly not "weighty." Furthermore, laws which impose a prior restraint must be drawn with narrow specificity. *Id.* These rules are not narrowly drawn; they cover every direct contact with the board. Pretrial Order, Exhibit T.

 I conclude that it was clearly established in March 1981, that the channels rules were an impermissible prior restraint on a teacher's exercise of first amendment rights. If it is found at trial that a substantial factor in Groshong's decision to discipline Anderson was his letter to the Board, Groshong will not be entitled to the good faith immunity defense since "a reasonably competent public official should know the law governing his conduct." *Harlow, supra,* 102 S.Ct. at 2739.

### C. Defendants' Motion for Partial Summary Judgment

Defendants request summary judgment on four grounds: (1) that Groshong is immune from liability because he acted in good faith; (2) certain elements of the claimed damages are noncompensable; (3) punitive damages may not be awarded against defendant Groshong; and (4) Groshong, and thereby the district, was absolutely privileged to make the allegations in the letters of March 3 and March 24, 1981, or alternatively, the defendants were conditionally privileged. Defendants' motion for partial summary judgment is denied.

and sent the March 3, 1981 letter to Anderson.

### 1. Groshong's Immunity

Defendants' cross-motion on this issue is denied for the same reasons that I have granted plaintiff's motion on this issue. Groshong is not entitled to the defense of good faith immunity.

### 2. Damages

Defendant contends that the following elements of claimed damages are noncompensable:

a. for loss to reputation or employability and the physical and mental injury resulting from the reputational and employability injuries;

b. damages attributable to the unfulfilled threat to disqualify plaintiff from coaching;

c. damages attributable to what was said by defendants, as distinguished from what was done to plaintiff;

d. damages attributable to the prosecution or defense of this action.

■ Defendant contends that reputational damages are not recoverable in an § 1983 action citing *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Defendants misread *Davis.* The case does not stand for the proposition that a plaintiff can never recover damages for loss of reputation in a § 1983 action. Rather, *Davis* holds that reputation *alone* is neither "liberty" nor "property" sufficient to invoke substantive due process.

I conclude that this case is governed by *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). "In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question ...." *Id.* at 258–59, 98 S.Ct. at 1050. Plaintiff is entitled to prove at trial that his reputation was injured by the deprivation of his constitutional rights. *Busche v. Burkee,* 649 F.2d 509, 519 n. 13 (7th Cir.1981). The amount

and type of damages necessary to compensate an individual for the deprivation of constitutional rights is a question of fact that cannot be decided on summary judgment. *Id.* at 518.

■ Likewise, plaintiff is entitled to prove his claim for emotional distress at trial. The Ninth Circuit has held that damages may be recovered for mental and emotional distress in a § 1983 case. *Donovan v. Reinbold,* 433 F.2d 738, 743 (9th Cir.1970). Defendants' motion for summary judgment on this issue is denied.

### 3. Punitive Damages

■ Defendants contend that plaintiff cannot recover punitive damages against Groshong because: (a) Groshong had the constitutional right to make some criticism of plaintiff, and imposition of punitive damages would chill the exercise of such right, and (b) since plaintiff's claims seek recovery for speech related injury, punitive damages are prohibited as a matter of law.

Defendants' first argument misapprehends the nature of Anderson's § 1983 claim. The wrongful act was Groshong's termination of Anderson from coaching duties, not Groshong's "criticism" of Anderson. The cases cited by defendants are irrelevant.

■ Furthermore, federal, not state, common law governs the determination of damages in a § 1983 case. *Sullivan v. Little Hunting Park,* 396 U.S. 229, 238–40, 90 S.Ct. 400, 405–06, 24 L.Ed.2d 386 (1969). Punitive damages are available under appropriate circumstances. *Carey v. Piphus,* 435 U.S. at 257 n. 11, 98 S.Ct. at 1049 n. 11; *Bradshaw v. Zoological Society,* 569 F.2d 1066, 1068 (9th Cir.1978). Whether or not to allow such damages is within the discretion of the trial court. Nonetheless, plaintiff is entitled to prove at trial that he is entitled to punitive damages. The defendants' motion for summary judgment is denied.[4]

---

**4.** Defendants argue that punitive damages are not available as a matter of law on the state constitutional claims. In light of my ruling on

the state claims, *infra,* I do not address this contention.

#### 4. *Defendants' Privilege Claim*

 Defendants claim that they were absolutely privileged to criticize Anderson and so this action for damages cannot proceed. This argument again misconstrues plaintiff's action. Defendants begin their argument by stating: "If this case were labeled a defamation action . . . ." This case, however, is not a defamation action; it is a § 1983 action based on an alleged unconstitutional punishment for exercising first amendment rights. Defendants' arguments are not well taken; the motion for summary judgment is denied.[5]

#### D. *Defendants' Motion to Abstain*

 Defendants move the court to decline to exercise pendent jurisdiction over plaintiff's state constitutional claims. I find that Anderson's claim under the Oregon Constitution arises out of the same set of operative facts as the § 1983 claim. I, thus, have power to entertain this claim. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Nonetheless, as noted earlier, the exercise of pendent jurisdiction is a doctrine of discretion. *Id.* at 726, 86 S.Ct. at 1139. A federal court should not exercise pendent jurisdiction over state law issues "that might be more appropriately left to settlement in state court litigation." *Id.* at 726 n. 15, 86 S.Ct. at 1139 n. 15. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.* at 726, 86 S.Ct. at 1139.

I conclude that this is not an appropriate case in which to exercise pendent jurisdiction because the state law at issue is unsettled. At oral argument on this issue, I asked the parties to brief the question of whether a cause of action for damages exists for actions brought directly under sections 8 and 20 of Article I of the Oregon Constitution. The plaintiff, however, was unable to find support for his contention that the Oregon courts have allowed damage claims directly under the Oregon Constitution. Plaintiff states: "Weighing the relative probabilities, Plaintiff believes that at the least, it is more likely than not that the Oregon courts would resolve Plaintiff's state law claims on the merits." Plaintiff's Letter Brief at 2. This issue is one which is better left to the Oregon courts in the first instance. Plaintiff's claim under the Oregon Constitution is dismissed without prejudice.

#### E. *Defendants' Motions in Limine*

 Defendants' motions in limine request that I decide certain issues before trial. First defendants request that I determine that Anderson was a public figure with respect to the subjects of the letters of March 3 and 24, 1981. If he was a public figure, defendants argue that he must prove that the criticisms in the two letters were made with actual malice. Plaintiff claims that this motion is irrelevant since this is not an action for defamation. I agree and deny the motion.

Secondly, defendants request that I find that plaintiff cannot recover damages based on harm to his reputation because he voluntarily distributed the letter of March 3, 1981 to a wider circle of individuals than that aimed at by Groshong. I deny the motion.

Finally, defendants request an order prohibiting plaintiff from making any reference to the grant of the preliminary injunction, the pendency of the counterclaim, and the amendment of the District's channels rules, when such reference is to prove prior deficiencies in those rules. I deny the motion at this time; defendants may object to any testimony at trial and I will rule on the objections then. "Orders *in limine* which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear*

---

**5.** The only absolute privileges recognized by the Supreme Court in § 1983 actions are for legislators, judges, prosecutors and the President of the United States. *Harlow v. Fitzger-* *ald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). All others are only entitled to a qualified good faith immunity. *Id.*

*Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.1976).