Argued and submitted January 18, reversed and remanded April 11, reconsideration
denied May 25, petition for review denied June 26, 1984 (297 Or 340)

# BOYCE,
*Respondent,*

*v.*

# UMPQUA COMMUNITY COLLEGE et al,
*Appellants.*

## (E82-2096; CA A28091)

680 P2d 671

Eldon F. Caley, Roseburg, argued the cause and filed the briefs for appellants.

Robert D. Durham, Eugene, argued the cause for respondent. With him on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendants appeal from a judgment on writ of review, in which the trial court ordered Umpqua Community College (Umpqua) to reinstate plaintiff Boyce in the status of "continuing contract instructor" with back pay and other employment benefits. We reverse.

Boyce was employed by Umpqua as a continuing contract employe through the 1980-81 school year. On March 3, 1981, the college president and two deans delivered to plaintiff the following letter:

"Pursuant to college board policy 308.19 Non-Renewal of Continuing Contract, we are recommending to the board that your contract be reduced to probationary one-year status for the 1981-82 academic year.

"The reason for this action is that full time instructor staffing is based on student enrollment and your classes have not maintained sufficient student enrollment since 1975-76."

The college board officially met on March 10, 1981, and took action to rescind the continuing contract of several employes, including plaintiff. Plaintiff was present at the meeting and aware of the board's action.[1] On March 26, 1981, he received written notice of the board's March 10 action.[2] Pursuant to the March 3 letter, plaintiff accepted employment as a one-year probationary employe and filed a grievance under applicable college policies, seeking reinstatement as a continuing contract employe.

On February 25, 1982, the president and deans sent plaintiff a letter stating their intent to recommend to the college board that he not be rehired for the 1982-83 school

---

[1] The minutes of the board meeting show that plaintiff "requested permission to address the board regarding his concerns over rescinding of his two year contract to a one year."

[2] The text of the March 26, 1981, letter states:

"At the March 10, 1981, college board meeting, they adopted our recommendation to rescind your continuing contract and be placed on a one-year probationary contract as Level II, Step 4 of the Instructor Salary Schedule.

"You have received or soon will be receiving separately a report regarding your current evaluation status. This letter will serve as a commitment on the part of the college until an official contract can be made.

"Please indicate in writing by April 15, 1981, your intentions regarding acceptance of this offer."

year. On March 9, 1982, the board voted not to renew his employment, and on March 26, 1982, he received written notice that his employment would terminate at the end of the 1980-81 academic year, pursuant to the board's March 9 action. Plaintiff continued to teach his classes through June 20, 1982, and pursued his grievance. Pursuant to board policy,[3] the grievance hearings were restricted to an examination of the reasons and wisdom of the non-renewal, after which the Umpqua board voted to reconfirm the decision not to renew plaintiff's contract. Plaintiff subsequently filed this action in circuit court, seeking a review of the board's action under ORS 34.010 through 34.100.[4]

Umpqua had promulgated certain policies pertaining to personnel in effect at all material times, which created two categories of employment for instructors: "probationary" employment and "continuing contract" employment.[5] The policies contain the following provisions relevant to resolve this dispute:

"308.1 *Preface:* This section establishes, pursuant to ORS 341.290, the rules for discipline and procedures to be followed for disciplinary proceedings pertaining to all employees of the District.

"This section also enacts rules pertaining to the non-renewal of employment contracts.

"No irregularity or noncompliance with any of the provisions of this section shall nullify or otherwise affect the

---

[3] The policy provides:

"At the hearing the employee shall have a full opportunity to challenge the reasons and wisdom of his non-renewal * * *. In any event, the board retains to itself absolute policy discretion to affirm the non-renewal or to make any other disposition of the matter it deems proper."

[4] Joined with the writ of review was a second claim for relief under the Oregon Tort Claims Act and 42 USC § 1983. Because the trial court disposed of the alleged non-renewal policy violations as a final judgment pursuant to ORCP 67B, the court did not decide this claim and expressed no view regarding the merits.

[5] The term "probationary employee" is defined by policy 308.2(m) as follows:

"Any employee except the President and the Dean who is employed under a written contract for an academic year, but who has not been granted 'continuing contract status.'"

The term "continuing contract employee" is defined by policy 308.2(f) as follows:

"Any employee who has been granted 'continuing contract status' pursuant to District policy, except the President and Deans."

finality of any action taken hereunder unless it shall have materially prejudiced the party adversely affected thereby.

"* * * * *

"308.18 *Non-Renewal of a Probationary Employee:* A probationary employee is entitled to notice that his contract will not be renewed. He shall be entitled to this notice on or before March 15th of his current contract year. If a probationary employee is not notified of non-renewal by March 15th, his contract will be deemed renewed for one additional year only. The notice of non-renewal need state only that the contract will not be renewed. However, the probationary employee shall, upon his request, be given a statement of the reasons for such non-renewal.

"308.19 *Non-Renewal of a Continuing Contract Employee:* After an employee has been formally granted the status of continuing contract employee, his employment will be continuous unless he * * * is not renewed in the manner hereafter provided. In the event that the contract of a continuing contract employee is not to be renewed, that employee shall be given written notice of non-renewal no later than March 15 of a school year. Upon being given such notice, the employee will continue to be an employee of district until June 30th of the year following the year to which the March 15th non-renewal date applies."

The trial court found that plaintiff was entitled to reinstatement as a continuing contract employe, because Umpqua failed to give him effective notice of the board's action under Umpqua's policies in that: (1) the notice advised plaintiff of the board's intent to "rescind" his continuing contract status rather than "non-renew," and (2) plaintiff did not receive written notice that the college would not renew his contract on or before March 15 of the school year. Umpqua appeals, claiming that the notice was adequate and that, in any event, plaintiff was not materially prejudiced by any deficiencies, as required by section 308.1 of the policies, and, therefore, not entitled to relief.

■ The trial court concluded that the notice was not adequate, because the board approved an administrative recommendation to "rescind" plaintiff's contract. Because Umpqua's policy on non-renewal does not permit Umpqua to "rescind" a continuing contract once it has been granted, the trial judge found that the Umpqua board of directors acted outside of its procedures and the action was therefore ineffective. We are not persuaded. The March 3 notice, the board

action and the March 26 notice conveyed the clear message that Umpqua intended not to renew plaintiff's continuing contract status and offered him employment as a probationary status employe for the 1981-82 term. The letter of March 3, stating that the action was taken "pursuant to college board policy 308.19 Non-Renewal of Continuing Contract," leaves no doubt as to the policy relied on.

According to policy 308.19, plaintiff was entitled to and received employment through another school year after the non-renewal of his continuing contract whether or not he accepted the offer of probationary status for one year. The only effect of the grant of probationary status was to give plaintiff the right to additional notice by March 15 of the 1981-82 school year rather than simply automatic termination pursuant to policy 308.19. Plaintiff accepted the one-year probationary term and filed a grievance. Although he disagreed with the board's action, there is no indication that the effect of the board's notice was not clear to all parties. Under these circumstances, we decline to afford "non-renew" the significance of a "magic" word and concluded that the use of the word "rescind" does not invalidate the board's action.

■      In the alternative, the trial court concluded that plaintiff was not given written notice of non-renewal of his continuing contract by March 15, 1981, as required by policy 308.19, which automatically bestowed reemployment on him. The court relied on *Welo v. Dist. Sch. Bd., Dist. No. 7,* 24 Or App 443, 545 P2d 921 (1976), and *Wallis v. Crook County School Dist.,* 13 Or App 174, 509 P2d 44 (1973), to support this conclusion. In *Welo* and *Wallis,* we held that the school board's failure to give written notice of contract non-renewal by March 15 of the school year, as required by ORS 342.513(1),[6] in effect at that time, automatically confers

---

[6] The statute in *Wallis v. Crook County School Dist.,* 13 Or App 174, 509 P2d 44 (1973), was ORS 342.508(2), (*repealed by* Or Laws 1973, ch 298, § 9) and replaced by ORS 342.513(1) (*amended by* Or Laws 1979, ch 714, § 1). The controlling statute in *Welo v. Dist. Sch. Bd., Dist. No. 7,* 24 Or App 443, 445, 545 P2d 921 (1976), provided:

"Each district school board shall give written notice by March 15 of each year to all teachers and administrators in its employ who are not under tenure or who are not eligible for a three-year contract under ORS 342.508 [of] the renewal or non-renewal of the contract for the following school year. * * * If any district school board fails to give such notice by March 15, the contract shall be considered renewed for the following school year at a salary not less than that being received at the time of renewal. * * *"

reemployment on the affected teacher. But this case presents a different issue. Plaintiff is not a certified public school or education service district employe entitled to rely on ORS 342.513(1),[7] and *Welo* and *Wallis* do not control the result here.

■ There is no statutory procedure for community college personnel similar to ORS 342.513(1), which applies to school districts. Umpqua is authorized by ORS 341.290[8] to adopt policies defining terms and conditions of employment. *Cole v. Chemeketa Community College,* 58 Or App 77, 83, 647 P2d 935, *rev den* 293 Or 521 (1982). Plaintiff's rights and responsibilities are controlled by the terms of his contract and Umpqua's personnel policies incorporated into that contract. *See Yartzoff v. Democrat-Herald Publishing Co.,* 281 Or 651, 576 P2d 356 (1978).

■ Umpqua's policy 308.19 requires that written notice of non-renewal be given to a continuing contract teacher by March 15 of the school year and entitles that teacher to continue for one subsequent school year. We agree with the trial court that the March 3, 1981, letter from defendants does not qualify as a non-renewal notice, because it described the college administrators' anticipated recommendation, not a non-renewal action by the college board. The notice of the board's non-renewal action was given plaintiff on March 26, 1981, 11 days after the deadline. But, unlike the automatic reemployment rule of ORS 342.513(1), the Umpqua policies require some showing of material prejudice to the party adversely affected by an irregularity or non-compliance with any provisions of the non-renewal procedure. The trial court noted that the deficiencies in timeliness and the adequacy of the notices were material deficiencies in procedure, but a

---

[7] In fact, the current version of ORS 342.513(1) provides for written notice by April 1 of the school year, which would be of no help to plaintiff in this case.

[8] ORS 341.290 provides, in pertinent part:

"The board of education of a community college district shall be responsible for the general supervision and control of any and all community colleges operated by the district. Consistent with any applicable rules of the State Board of Education, the board may:

"(1) Subject to ORS ch 237 [relating to public employes' retirement], employ administrative officers, professional personnel and other employes, define their duties, terms and conditions of employment and prescribe compensation therefore, pursuant to ORS 243.650 to 243.782 [relating to collective bargaining]."

search of the record produces no finding or evidence of material prejudice *resulting* to plaintiff from either the uncertain terms of the March 3, 1981, notice or the untimely March 26, 1981, notice. The mailing of the March 3, 1981, notice provided plaintiff with an opportunity to attend the meeting where the contemplated action was to take place. Plaintiff did attend that meeting and personally witnessed the board's action. The minutes of the meeting show that he requested an opportunity to address the board regarding his concerns over the action and, at the board's direction, pursued his grievances as the Umpqua policies provide. There being no showing of material prejudice, we conclude that the deficiencies in the March 3, 1981, and March 26, 1981, notices did not affect the finality of the board's action not to renew plaintiff as a continuing contract teacher.

Identical deficiencies are claimed in the February 25, 1982, and March 26, 1982, notices of the board's action of non-renewal of plaintiff as a probationary teacher one year later, as required by section 308.18 of Umpqua's policies. Similarly, we conclude that the notice was not timely, but no claim of material prejudice was made or proven to negate the finality of the board's action. Accordingly, we conclude that the court erred in reinstating plaintiff and ordering back pay.

Reversed and remanded.