Betty A. SCHNEIDER, Appellant,

v.

PAY'N SAVE CORPORATION; and
Donald B. McCumby and Randy
Cry, individually, Appellees.

No. S–1257.

Supreme Court of Alaska.

Aug. 8, 1986.

Terrence H. Thorgaard, Fairbanks, for appellant.

Thomas Waldock, Farleigh & Waldock, Anchorage, for appellees.

Before RABINOWITZ, C.J., BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Betty A. Schneider was a cashier for the University Mall Pay'N Save store in Fairbanks from October 1980 until November 1983. On November 14, 1983 Schneider was terminated from her job for failing to ring up certain sales. She sought judicial relief, but her claims were dismissed on summary judgment. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The uncontroverted evidence establishes the following facts: Pay'N Save teaches its new employees that without exception, each sale of merchandise must be recorded on, and the money for the purchase deposited in, a cash register. Pay'N Save periodically hires Federal Business Systems of Alaska, Inc. (FBS), a separate corporation which is not owned or controlled by Pay'N Save, to test the performance of its employees. FBS operatives arrive at a designated Pay'N Save store unannounced and proceed to test or "shop" the employees who happen to be working that day. For each cashier tested, a "tie-down" purchase is made, i.e., a FBS operative goes through the check-out line, pays for an item of merchandise and obtains a receipt. The cash register contains a detail tape that records each sale in the order in which it is

made. Immediately before or after the tie-down purchase, two additional FBS operatives come through the check-out stand, place on the counter the exact change necessary for a purchase, and leave the store before the sale can be rung up. The operatives report in writing the time of each purchase, the name and description of the cashier, a description of the merchandise purchased, and other relevant data. By finding the tie-down purchase on the detail tapes, Pay'N Save's security personnel can then determine whether or not the cashier recorded the two control transactions.

If it is determined that a cashier failed to record one or both of the control transactions, that cashier is singled out for a second series of tests on the following day. Thus, a cashier who is suspected of failing to record sales will be tested four times in two days. Pay'N Save security personnel additionally review the daily sales report for each of the two days in question to determine if the suspected cashier's register is "over" or "short." [1]

If a cashier who is tested four times in two days is found to have failed to record three of the four sales, it is Pay'N Save's policy to terminate that cashier for failure to record sales. This is true whether the failure to record the sales is intentional or careless.

FBS randomly tested numerous Pay'N Save employees in Fairbanks on November 11, 12 and 13, 1983. Betty Schneider worked on November 12 and 13 at the Pay'N Save University Center store.

On November 12 FBS made two control purchases at Schneider's check-out stand. At the end of the day Pay'N Save's Loss Prevention Manager for Alaska, Randall Cry, reviewed the detail tape from Schneider's register and discovered that she had failed to record both of the control transactions. Cry additionally checked the Pay'N Save daily sales report for November 12. Schneider's register was short $6.86.

Having failed the first two tests, Cry directed FBS to retest Schneider on Sunday, November 13. The FBS made two more control purchases at Schneider's cash register the next day. Once again, Cry found that neither control transaction had been recorded by Schneider. Additionally, Schneider's register was $9.40 short that day. Cry reported his findings to the store manager.

On November 14, Schneider was told that she had been tested by FBS over the weekend and had failed to record four control sales. Schneider admitted that she knew of the Pay'N Save policy which required each sale to be rung up, and that she could remember not ringing up two of the transactions. Cry asked Schneider if she put the money from the sales in the cash register. Schneider stated that she had. Cry insisted, however, that he did not think she had and that he thought she took the money. Cry concluded by stating "I'm not going to terminate you for stealing, but I am going to terminate you for failure to follow the Pay'N Save policy. But I still think you took the money." Schneider was terminated as a Pay'N Save employee.

Schneider sued Pay'N Save and two of its employees (Pay'N Save). In her complaint Schneider sought compensatory and punitive damages against Pay'N Save for wrongful termination and defamation. Pay'N Save moved for summary judgment. After briefing and oral argument, Judge Gerald J. Van Hoomissen granted the motion on August 21, 1984. Final judgment was entered October 2, 1985 and an appeal filed November 1, 1985.

On appeal Schneider claims that (1) the trial court improperly granted summary judgment on the defamation claim, and (2) her discharge was in violation of the per-

---

**1.** Each Pay'N Save store prepares a daily sales report. For each cash register in the store, the total cash, checks, credit card sales, and credit slips are counted and compared to the total sales shown on the detail tape. A cash register is "short" if the cash, checks, etc. are less than the total sales shown on the detail tape. A cash register is "over" for the day if the cash, checks, etc. exceed the total sales for the day.

sonnel rules of Pay'N Save.[2] Pay'N Save claims that Schneider's appeal was not timely filed.

## II. WAS SCHNEIDER'S APPEAL TIMELY FILED?

Summary Judgment was granted August 21, 1984, final judgment entered October 2, 1985 and Schneider's appeal filed November 1, 1985.

Pay'N Save claims that Schneider's appeal is untimely because it was not filed within thirty days of the August 21 order granting summary judgment. Schneider contends that the time to file her appeal started when final judgment was entered on October 2 and therefore her appeal on November 1 is timely.

■ Appellate Rule 204(a)(1) requires that a notice of appeal be filed within thirty days from the date of the "judgment" appealed from. The question is what is a "judgment" for the purposes of an Appellate Rule 204(a)(1) appeal?

Civil Rule 58 provides, in part, that upon making a decision, the court shall forthwith enter "judgment." Specifically, the rule requires that every judgment entered by the court "shall be set forth on a separate document." Accordingly, the "judgment" which is referred to in Appellate Rule 204(a)(1) is a document which is separate from any opinion, memorandum or order the court may issue. *See* 6A. J. Moore, J. Lucas, and G. Grother, Jr., Moore's Federal Practice § 58.02.1, at 58–19 (2d ed. 1984) (hereinafter J. Moore).

The separate document provision in Civil Rule 58 was added to the Federal Rules of Civil Procedure in 1963 and to Alaska Rules of Civil Procedure in 1983. Alaska

Supreme Court Order 544 (Eff. 1983). The reason for the addition was to "prevent any uncertainty concerning the date a judgment becomes final and effective, for the purposes of determining when the time limitations for post verdict motions and appeals begins to run." 6A J. Moore, *supra*, § 58.02.1, at 58–19.

*United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973) illustrates the separate document rule. In *Indrelunas*, two taxpayers sued for a refund on their taxes. Verdicts were returned for the taxpayers and entered on the court's civil docket. Several months after the docket entry, the district court entered formal judgments. When the government appealed from the judgments, the court of appeals dismissed the appeal as untimely, holding that the "judgment" had been rendered at the time of the docket entry. The United States Supreme Court reversed, holding that the date when the relief was entered as a formal judgment on a separate document was the date when the appeal may be taken. The Court stated that the separate document provision "must be mechanically applied in order to avoid new uncertainties as to the date on which a judgment is entered." 411 U.S. at 222, 93 S.Ct. at 1565, 36 L.Ed.2d. at 207.[3]

■ We adopt the rule announced in *Indrelunas* and apply it to this case. Like the taxpayers in *Indrelunas*, Pay'N Save was awarded relief on one date but final judgment was entered at a much later time.

We conclude that October 2, 1985, when the formal judgment was entered on a separate document, triggered the appeal process for Schneider. Therefore, Schneider's

---

**2.** Schneider also contends that the trial court improperly admitted certain hearsay evidence. We do not address this issue, however, because it was not set forth in her Statement of Points on Appeal, *Brock v. Alaska International Industries, Inc.*, 645 P.2d 188, 190 n. 10 (Alaska 1982), nor raised in the trial court, *Williams v. Alyeska Pipeline Service Co.*, 650 P.2d 343, 351 (Alaska 1982). Schneider concedes as much in her reply brief.

**3.** In *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), the Supreme Court held that the parties can waive the separate judgment requirement where a party files an appeal before a separate judgment has been entered and one is accidently not entered. *Id.* at 386, 98 S.Ct. at 1120, 55 L.Ed.2d at 362. The Supreme Court ruled that a decision can be final even if not set forth on a separate document. *Id.* at 386 n. 7, 98 S.Ct. at 1120 n. 7, 55 L.Ed. at 362 n. 7.

appeal was timely because it was filed within thirty days of the October 2, 1985 entry of judgment.[4]

## III. DID THE TRIAL COURT IMPROPERLY GRANT SUMMARY JUDGMENT ON THE DEFAMATION CLAIM?

In her complaint, Schneider alleged that co-defendant Randall Cry, the store's loss prevention manager, defamed her by maliciously accusing her of stealing money from the store. Pay'N Save's answer denied the defamation charge and asserted an affirmative defense of conditional privilege. Subsequently, Pay'N Save successfully moved for summary judgment on "each of the claims ... stated in plaintiff's complaint."

Schneider claims that the trial court improperly granted summary judgment dismissing her defamation claim against Pay'N Save because it had insufficient evidence to rule on the defamation issue. She argues that Pay'N Save failed to submit affidavits or other admissible evidence to rebut the defamation claim and support its affirmative defense of conditional privilege.

Pay'N Save claims that Randall Cry's defamatory statement, if indeed it was, was conditionally privileged because he made it while acting in the employer/employee relationship. Pay'N Save urges us to uphold the trial court's ruling on the ground that it appropriately determined, on the undisputed facts before it, that Randall Cry's statement was conditionally privileged.

When reviewing a grant of summary judgment, we will reverse only if the evidence in the record, taken in the light most favorable to the non-moving party, poses genuine issues of material fact. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1284 (Alaska 1985) (citations omitted). A material issue of fact exists where reasonable jurors could disagree in the resolution of the factual issues as presented by the moving papers. *Green v. Northern*

*Publishing Co.*, 655 P.2d 736, 742 (Alaska 1982), *cert. denied*, 463 U.S. 1208, 103 S.Ct. 3539, 77 L.Ed.2d 1389 (1983).

Restatement (Second) of Torts § 593 provides:

> One who publishes defamatory matter concerning another is not liable for the publication if:
>
> a) the matter is published upon an occasion that makes it conditionally privileged and
>
> b) the privilege is not abused.

■■■ The defendant must establish the existence of a privileged occasion for the publication by proving a recognized public or private interest which justifies the utterance of the words. W. Prosser, The Law of Torts § 115, at 796 (4th ed. 1971) (hereinafter W. Prosser). Whether the occasion gives rise to a privilege is a question of law for the court. *Id.;* Restatement (Second) of Torts § 619 (1977). If the facts are in dispute, the jury determines whether a conditional privilege has been abused. W. Prosser, *supra,* § 115 at 796.

### A. Did the Trial Court Err in Recognizing a Conditional Privilege Based on an Employer/Employee Relationship?

Restatement (Second) of Torts § 595 provides:

> (1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that
>
> (a) there is information that affects a sufficiently important interest of the recipient or a third person, and
>
> (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

This court has recognized two types of conditional privileges: 1) the conditional

---

**4.** In arguing that Schneider's appeal was untimely, Pay'N Save relies on cases which were decided prior to the 1983 amendments to Civil Rule 58. These cases are inapposite.

privilege accorded the media to print items of public interest, *Green,* 655 P.2d 736; *West v. Northern Publishing Co.,* 487 P.2d 1304 (Alaska 1971), and 2) the conditional privilege based on circumstances where any one of several persons having a "common interest" in a particular subject matter believes that there is information that another sharing the common interest is entitled to know, *Lull v. Wick Construction Co.,* 614 P.2d 321 (Alaska 1980) (privilege based on joint business interest). We have never addressed a conditional privilege based on the employer/employee relationship.

■ The comments to Restatement § 595 indicate that a statement made for the protection of a lawful business, professional, property or other pecuniary interest falls within this rule if it is called for by a legal or moral duty or by generally accepted standards of decent conduct. W. Prosser, *supra* § 115, at 787; Restatement (Second) of Torts § 595 comments d, e (1977). The privilege is clearest when a legal relationship exists between the defendant and the person on whose behalf he intervenes. Prosser states that a "physician may speak to protect the interest of his patient, an attorney that of his client, or an agent or employee that of his principal or employer." W. Prosser, *supra,* § 115 at 788. We find the reasoning of Prosser and the Restatement persuasive. Therefore, we recognize a conditional privilege based upon the employment relationship absent a showing of abuse. *See generally,* 50 Am. Jur.2d *Libel and Slander* § 271, at 789 (1970).

Applying the Restatement (Second) of Torts § 595 to the uncontroverted evidence as stated in the facts and before the trial court, we conclude that the court correctly decided as a matter of law that Randall's Cry's statements were conditionally privileged.

■ First, Cry's statements to Pay'N Save regarding Schneider's failure to ring up certain control sales affected a "sufficiently important interest" of Pay'N Save to warrant the communication. Pay'N Save had a legitimate proprietary interest in protecting its lawful business from theft or mishandling of money. Second, Cry, as manager of loss prevention, had a duty to report to Pay'N Save the information regarding the short cash register and Schneider's failure to ring up the control sales. Cry's statement therefore satisfies the requirements of Section 595. We conclude that reasonable jurors could not disagree that Cry's statements were conditionally privileged.

**B. Did Cry Abuse the Conditional Privilege?**

■ The protection afforded by the employer/employee relationship is conditioned upon publication in a reasonable manner and for a proper purpose. *See generally,* Restatement (Second) of Torts § 599 (1977). This court has stated that a conditional privilege which is abused by the writer or speaker is lost and he must answer for the legal consequences of his publication. *Fairbanks Publishing Co. v. Francisco,* 390 P.2d 784, 793 (Alaska 1964). Ordinarily, once a defendant establishes the existence of a privilege the plaintiff has the burden of proving that it has been abused. W. Prosser, *supra,* § 115, at 796.

■ Whether a defendant has abused a privilege is a question of fact for the jury unless the facts are such that only one conclusion can reasonably be drawn. W. Prosser, *supra,* § 115, at 796. By granting summary judgment against Schneider on the defamation claim, the trial court found that reasonable jurors could not differ in concluding that Cry did not abuse his privilege.

■ The comments to Restatement (Second) of Torts § 599 provide that a conditional privilege may be abused because of:

the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter ...; because the defamatory matter is published for some purpose other than that for which the particular privilege is given ...; because the

publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege . . .; or because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged.

Restatement (Second) of Torts § 599 comment a (1977).

We adopt these four bases of determinating whether a speaker or writer has abused a conditional privilege.

■■■■ The present case involves a suit between a non-media defendant and a private figure. Cry's statement involves no issue of public concern. This court has never addressed whether the "actual malice" standard from *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), applies in a private party context. However, we do not decide this issue now since Cry's statement does not satisfy the lowest showing of fault necessary for liability. In cases involving private individuals and issues of private concern, liability attaches if the speaker or writer at the very least acted negligently in publishing the defamatory statement. *See* Restatement (Second) of Torts § 580B and comments g, h (1977); *Gertz*, 418 U.S. at 347–48, 94 S.Ct. 418–19, 41 L.Ed.2d at 809–10; *cf. Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. ——, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) (recovery of presumed and punitive damages in defamation cases involving private individuals and issues, absent showing of "actual malice", does not violate first amendment). Here, the undisputed evidence establishes that Cry personally reviewed the detail tape and daily sales report from Schneider's register, found that Schneider failed to ring up certain sales and that her register was short. From this evidence, Cry could reasonably believe that Schneider had taken the money. Additionally, Cry acted reasonably in checking on the truth or falsity of the communication before publishing it. Restatement (Second) of Torts § 580B comment g (1977). We conclude that reasonable jurors could not disagree that Cry reasonably and not negligently published the statement.

Second, Cry did not make the statement for an improper purpose. Pay'N Save hired Cry as their loss prevention manager to help protect its business from theft and the mishandling of money. Cry's statement that Schneider took the money was directly related to the purpose of protecting Pay'N Save from theft or mishandling of money. There is no evidence showing that Cry made the statement out of spite or ill will, which is an abuse of the privilege. *See* Restatement (Second) of Torts § 603 comment a (1977). Indeed, Schneider admitted that Cry had always been polite to her.

Third, there is no evidence that Cry excessively published his statement by speaking the defamatory words in the presence of persons whose knowledge of them was unnecessary to the protection of the interest in question. *See* Restatement (Second) of Torts § 604 comment a (1977).

The evidence shows that Cry made the statement to Schneider in a closed meeting, which only included Schneider, Cry, the store manager and a female member of Pay'N Save's management.[5] Each person had a legitimate interest in the subject matter of the meeting.

Finally, we must decide whether Cry abused his privilege because his statement was unnecessary to accomplish the purpose that justified his privilege. *See* Restatement (Second) of Torts § 605 comment a (1977). For example, one who is privileged to tell a police officer that the plaintiff committed a crime abuses the privilege if he makes charges against the plaintiff's moral character that have no reasonable bearing upon the offenses attributed to him. *Id.*

---

**5.** It is Pay'N Save's policy that a management person of the same sex witness the interview of an employee who is questioned about any matter which may lead to disciplinary action.

As previously indicated, Cry's purpose at Pay'N Save was to protect it from theft of property or the mishandling of money. An accusation of theft has a reasonable bearing upon the offense with which Schneider was being investigated. Therefore, we conclude that reasonable jurors would agree Cry did not abuse the employer/employee privilege when he accused Schneider of theft.

### IV. DID PAY'N SAVE TERMINATE SCHNEIDER IN VIOLATION OF THEIR PERSONNEL RULES?

Schneider claims that the trial court erred in granting summary judgment on the issue of whether Pay'N Save terminated her with just cause and in violation of their personnel rules.[6]

Schneider argues that the personnel rules require a written warning after the first failure to record a sale and a dismissal is appropriate only after the employee fails to record a second time after receiving a written warning.[7]

Pay'N Save Personnel Rules recommend that a written warning follow an employee's first intermediate offense. Schneider's failure to record a control sale was an intermediate offense.[8] The preface to the rules, however, states that the recommended disciplinary actions are not necessarily applicable in every instance. The rules advise that a more or less severe disciplinary action may be administered as the circumstances dictate. Therefore, when Pay'N Save recommends that a written warning follow the first intermediate violation, it reserves the management's right to administer more severe disciplinary action if the circumstances dictate.

The interpretation of a writing is a question of law for the court. *Alyeska Pipeline Service Co. v. O'Kelley*, 645 P.2d 767, 771 n. 2 (Alaska 1982). If the interpretation depends on extrinsic evidence, then the trier of fact should weigh such evidence. *Id.; Hausam v. Wodrich*, 574 P.2d 805, 809 (Alaska 1978).

In the instant case, we interpret the Personnel Rules as allowing Pay'N Save the discretion to administer more severe disciplinary action when the circumstances dictate. Neither party submitted extrinsic evidence which would require fact finding. Our interpretation is consistent with the precatory language of the rules. We find that the trial court properly granted summary judgment in favor of Pay'N Save because there was no question for the trier of fact.

AFFIRMED.

**6.** Schneider also contends that the trial court erred in finding that she was collaterally estopped from relitigating the issue of wrongful discharge. Prior to this lawsuit, Schneider was denied unemployment insurance because the Department of Labor found that she had been discharged for misconduct. Schneider concedes that she is collaterally estopped from denying that she failed to ring up certain sales. Additionally, she concedes that she failed to ring up certain sales. In light of these admissions and our resolution that Pay'N Save did not terminate Schneider in violation of their personnel rules, we do not need to address the extent to which collateral estoppel applies.

**7.** Schneider contends that the Pay'N Save Personnel Handbook is part of her employment contract with Pay'N Save and therefore the rules embodied in the handbook are legally binding upon Pay'N Save. This court has not addressed whether an employer's personnel handbook is legally binding as part of an employment agreement. For purposes of this decision only, we assume the handbook is part of the employment agreement.

**8.** The personnel rules define an intermediate offense as including the careless violation of an established loss prevention procedure. The failure to record a control sale is a violation of an established loss prevention procedure.

We also note that Schneider committed two successive intermediate violations, which constitutes a major violation under the personnel rules. Pay'N Save's policy of testing an employee on the day following his or her first failure to record a sale is an established procedure that had been applied to other employees. To issue a written warning following the first violation would clearly undermine the established procedure.