Marge JONES, Appellant,

v.

CENTRAL PENINSULA GENERAL HOSPITAL, Lutheran Hospitals and Homes Society of America, Nancy McIlwaine, Chriss Huss, Simon Hancock, and Glen Benson, Appellees.

No. S–2587.

Supreme Court of Alaska.

Aug. 25, 1989.

Paul S. Wilcox, Hughes, Thorsness, Gantz, Powell, and Brundin, Anchorage, for appellant.

Howard A. Lazar, Delaney, Wiles, Hayes, Reitman, and Brubaker, Inc., Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

RABINOWITZ, Justice.

## I. INTRODUCTION.

This appeal arises from Marge Jones' termination from employment as a nurse at Central Peninsula General Hospital (CPGH) in Soldotna. CPGH was and is operated by the Lutheran Hospitals and Homes Society (LHHS).

In her complaint Marge Jones alleged that LHHS, CPGH, and Chriss Huss and Simon Hancock, employees of CPGH, recklessly and wrongfully terminated her in violation of her contract of employment, and in violation of express and implied covenants of good faith and fair dealing. Jones also alleged that the defendants breached her contract of employment by failing to accord her access to the grievance procedures which were provided other employees. In a separate count Jones further alleged that defendant Glen Benson, acting regional director of LHHS, illegally ratified her wrongful discharge. Jones' complaint also contained two separate counts against Nancy McIlwaine in which it was asserted that McIlwaine defamed Jones and thus recklessly interfered with Jones' contract of employment with CPGH, as well as her prospective contractual relations. Additional claims alleged by Jones in her complaint have since been dismissed with prejudice by stipulation. By way of relief Jones sought both compensatory and punitive damages.

The superior court entered summary judgment in favor of CPGH and LHHS on Jones' wrongful termination and breach of contract claims. Summary judgment was also entered in McIlwaine's favor on the defamation and wrongful interference with contract claims. Jones' claims against Huss, Hancock, and Benson were dismissed. The superior court awarded $18,000 in attorney's fees and $3,248 in costs to the prevailing defendants.

## II. STATEMENT OF THE CASE.[1]

Marge Jones was employed by CPGH as a registered nurse from October 1, 1971, until her termination on October 5, 1978.

---

1. In reviewing the superior court's grant of summary judgment we determine whether there were any genuine issues of material fact, and whether the parties were entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c); *Stanfill v. City of Fairbanks,* 659 P.2d 579, 581 (Alaska 1983). In doing so we draw all reasonable inferences in favor of the non-moving party and against the movant. *Alaska Rent–A–Car, Inc. v. Ford Motor Co.,* 526 P.2d 1136, 1139 (Alaska 1974). This court will reverse only if, when viewed most favorably to the non-moving party, the evidence poses genuine issues of material fact. *Schneider v. Pay'N Save Corp.,* 723 P.2d

Jones had no contract for a specific length of employment. Rather, her employment was terminable at will. On July 1, 1974, LHHS issued a personnel policy manual which, among other things, provided for termination for cause and a grievance procedure for all employees.

In 1975 Jones became a "nurse supervisor" on the night shift. As a "nurse supervisor" Jones was the senior nurse on duty during her shift. She did not exercise such supervisory powers as scheduling, or hiring and firing her assistants.

In 1978 LHHS issued a second personnel policy manual. The 1978 manual exempted supervisory employees from the grievance procedures, but provided that all non-probationary employees would be terminable only for good cause.

Jones was terminated on October 5, 1978, for incidents that allegedly occurred during the evening of September 30th. LHHS denied Jones the opportunity to file a grievance on the ground that she was a supervisor, and therefore terminable at will.

The superior court granted summary judgment to CPGH and LHHS on the grounds that the 1978 policy manual was not part of Jones' employment contract, and that, as a supervisor, Jones was not protected by the grievance procedures set forth in the 1978 policy manual. The superior court also granted summary judgment to McIlwaine, former Director of Nurses at CPGH, on the ground that her allegedly defamatory statements were conditionally privileged. The court dismissed the claims against Huss, Hancock and Benson on the basis that, since CPGH and LHHS were entitled to summary judgment on the wrongful discharge and breach of contract claims, it followed that the individual defendants were entitled to have Jones' claims against them dismissed.

This appeal followed.

## III. WAS SUMMARY JUDGMENT PROPERLY GRANTED TO CPGH AND LHHS?

Jones argues that by issuing the 1974 personnel policy manual, LHHS modified the terms of her at-will employment, and bound itself to the policies and procedures in the manual. Alternatively, she argues that the 1978 manual provided her with the right to be terminated only for cause. LHHS responds that these personnel manuals did not form part of the employment agreement it had with Jones.

This court has never directly addressed the question of whether such a manual may become part of a contract between an employer and an employee. However, this question has been addressed in numerous other jurisdictions. Among the jurisdictions that have recognized that a policy manual may be incorporated into an employment agreement are: Alabama, *Hoffmann–La Roche, Inc. v. Campbell*, 512 So.2d 725, 733 (Ala.1987); Arizona, *Leikvold v. Valley View Community Hosp.*, 141 Ariz. 544, 688 P.2d 170, 172 (1984); California, *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 384–88 (1988); Connecticut, *Finley v. Aetna Life & Casualty Co.*, 202 Conn. 190, 520 A.2d 208, 213 (1987); Illinois, *Duldulao v. Saint Mary of Nazareth Hosp.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987); Maryland, *Staggs v. Blue Cross of Maryland*, 61 Md.App. 381, 486 A.2d 798, 803 (1985); Michigan, *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880, 885 (1980); Minnesota, *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626 (Minn.1983); New Jersey, *Woolley v. Hoffmann–LaRoche, Inc.*, 99 N.J. 284, 491 A.2d 1257, 1264 (1985); New Mexico, *Vigil v. Arzola*, 101 N.M. 687, 687 P.2d 1038, 1039 (1984); New York, *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458, 457 N.Y.S.2d 193, 199, 443 N.E.2d 441, 447 (1983); Ohio, *Hedrick v. Center for Comprehensive Alcoholism Treatment*, 7 Ohio App.3d 211, 454 N.E.2d 1343, 1346 (1982); Oregon, *Yartzoff v. Democrat–Herald Pub. Co.*, 281 Or. 651, 576 P.2d 356, 359 (1978); Pennsylvania, *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334,

619, 623 (Alaska 1986) (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1284 (Alaska 1985)). We have therefore set forth the facts as presented by Jones.

337 (1988) (*but see Richardson v. Charles Cole Memorial Hosp.*, 320 Pa.Super. 106, 466 A.2d 1084, 1085 (1983)); South Dakota, *Osterkamp v. Alkota Mfg.*, 332 N.W.2d 275, 277 (S.D.1983); Tennessee, *Hamby v. Genesco, Inc.*, 627 S.W.2d 373, 376 (Tenn. App.1981); Washington, *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 685 P.2d 1081, 1087 (1984); and Wisconsin, *Ferraro v. Koelsch*, 124 Wis.2d 154, 368 N.W.2d 666, 671 (1985).

These courts have stated that whether an employee handbook was incorporated into an agreement between an employer and an employee is a question of fact to be determined in each case. *See e.g., Leikvold*, 688 P.2d at 174. In particular, the facts must show that the employer has somehow indicated to the employee, at least in general, that employment policies favorable to the latter have been established. In a leading case on the enforceability of provisions contained in employee manuals, the Supreme Court of Michigan explained in relevant part:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

*Toussaint*, 292 N.W.2d at 892. The *Toussaint* court also noted that "[t]he 'rule' [that employment contracts for an indefinite term are terminable at will] is … a rule of construction…. To the extent that courts have seen the rule as one of substantive law rather than construction, they have misapplied language and principles." *Id.* 292 N.W.2d at 885.

A review of cases such as *Toussaint* evidences "a strong trend in favor of recognizing implied contract terms that modify the power of an employer to discharge an employee [without cause]." *Foley*, 765 P.2d at 384. By incorporating the terms of the manual into the employment contract, these courts have allowed employees a measure of job security. *See Thompson*, 685 P.2d at 1087–88. Some of these courts have characterized the provisions of these manuals as unilateral contracts. "The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer." *Mettille*, 333 N.W.2d at 627; *see also, e.g., Woolley*, 491 A.2d at 1267. *See also* Petit, *Modern Unilateral Contracts*, 63 B.U.L.Rev. 551, 561, 577 (1983); Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith*, 93 Harv.L.Rev. 1816, 1818 (1980).

Courts in other jurisdictions have declined to incorporate policy manuals into employment agreements. These jurisdictions include: Delaware, *Heideck v. Kent General Hosp.*, 446 A.2d 1095, 1096 (Del. 1982); Kansas, *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779, 781–82 (1979); Missouri, *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo.1988); Montana, *Gates v. Life of Montana Ins. Co.*, 196 Mont. 178, 638 P.2d 1063, 1066 (1982); and North Carolina, *Williams v. Biscuitville, Inc.*, 40 N.C.App. 405, 253 S.E.2d 18, 20 (1979). These courts continue to uphold the traditional rule that at-will employment may be terminated at any time for any reason. They find no binding contractual duty as a result of an

employer's issuance of a personnel manual. They generally reason that the protections provided for in these manuals do not bind the employer since the policies are unilaterally issued by the employer, and are not the product of a true agreement with the employee. *See, e.g., Heideck,* 446 A.2d at 1096; *Williams,* 253 S.E.2d at 20.

Although this court has not as yet directly addressed the issue, our decisions point towards a holding allowing the incorporation of employer manuals into at-will employment contracts. In our recent opinion in *Luedtke v. Nabors Alaska Drilling, Inc.,* 768 P.2d 1123, 1137 n. 13 (Alaska 1989), we said:

> [W]here the employment agreement is at-will, continuing to work after modification of that agreement is sufficient consideration to support the modification. *See Yartzoff v. Democrat–Herald Pub. Co.* [281 Or. 651], 576 P.2d 356, 359 (Or. 1978); 1A A. Corbin, *Corbin on Contracts* § 175, at 122 (1963).

In *Rutledge v. Alyeska Pipeline Service Co.,* 727 P.2d 1050, 1056 (Alaska 1986), we looked to an employee manual to evaluate Rutledge's tort claim that he was wrongfully terminated. There we "recognized that where employers indicate that termination will occur only for cause, they must comply or be liable for damages." *Id.* (citing *Toussaint,* 292 N.W.2d at 892). In *Eales v. Tanana Valley Medical–Surgical Group, Inc.,* 663 P.2d 958, 959 (Alaska 1983), we held that where an employer makes a representation to an employee that he would not be discharged as long as he performed his duties, that representation alters the terms of the at-will employment. In *Schneider v. Pay'N Save Corp.,* 723 P.2d 619, 626 n. 7 (Alaska 1986), we assumed for purposes of deciding the case that the employee manual governed, and affirmed the entry of summary judgment against the employee on the ground that the employer had complied with the manual.

We find the reasoning of *Toussaint* and similar cases persuasive. Given the foregoing decisions of this court and those decisions which we consider to represent the better reasoned approach, we hold that employee policy manuals may modify at-will employment agreements, and that whether a given manual has modified an at-will employment agreement must be determined on the particular facts of each case. Here we further conclude that the 1974 manual was superseded by the 1978 manual, and that the 1978 manual was incorporated into Jones' at-will employment agreement.[2]

In reaching this conclusion we reject LHHS's argument that its 1978 Institutional Personnel Policy Manual did not modify Jones' at-will employment status since the manual contained a disclaimer provision. In this regard the 1978 manual reads as follows:

> The purpose of this manual is to provide information to all Society [LHHS] employees. It is not a contract of employment nor is it incorporated in any contract of employment between the Society and any employee.

Relying on this language LHHS contends that even in those jurisdictions which recognize that a policy manual can impliedly become part of an employment contract, "the leading decisions have noted that employers would not always be bound by statements in employment manuals." In support of its position LHHS cites *Leikvold,* 688 P.2d at 174, where the court noted:

> Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions, either not issuing a personnel manual or issuing

---

**2.** The record clearly establishes that Jones was apprised of the existence of the 1978 manual by LHHS. This is admitted by LHHS. As we accept the theory that an employer's notification to an employee of a policy manual constitutes an "offer," which is accepted by the employee's continued performance, we conclude that the 1978 manual was incorporated into Jones' employment contract. *See Woolley,* 491 A.2d at 1267; *Mettille,* 333 N.W.2d at 627.

one with clear language of limitation, instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual.[3]

Our review of the 1978 Institutional Personnel Policy Manual persuades us that the purported language of limitation does not meet the *Leikvold* test. Our reasons are as follows:

First: The one-sentence disclaimer, followed by 85 pages of detailed text covering policies, rules, regulations, and definitions, does not unambiguously and conspicuously inform the employee that the manual is not part of the employee's contract of employment.[4]

Second: Contrary to *Leikvold*, the 1978 manual does not apprise the employee that his or her job is "terminable at the will of the employer with or without reason." In this regard the 1978 manual provides for the following "policy": that "[a]ll Society employees will be on probation during the first 520 hours (usually three months of full-time employment) of their employment with the Society," and that "[d]uring the probationary period an employee may be terminated without cause."[5] Of greater significance are the 1978 manual's provisions relating to the subject of termination for cause. In this regard the manual states that "[a]n Administrator may immediately terminate an employee for cause." The manual then goes on to describe fifteen non-exclusive categories of acts or omissions "that may result in termination for cause."

Third: In construing the purported language of limitation contained in the 1978 manual it is appropriate to distinguish between provisions containing policy guidelines (such as provisions relating to physical examinations of employees, employee appearance, smoking by employees, and courteous conduct required of employees) and those provisions of the manual which purport to grant rights to employees, such as those provisions relating to terminations for cause, grievance procedures and arbitration procedures. As to the rights category, a reasonable construction of the provisions and accompanying disclaimer leads to the conclusion that LHHS made a representation to its employees that it was bound to give effect to the rights granted until it saw fit to modify them.

The manual therefore creates the impression, contrary to the "disclaimer," that employees are to be provided with certain job protections. Employers should not be allowed to "instill ... reasonable expectations of job security" in employees, and then withdraw the basis for those expectations when the employee's performance is no longer desired. *Leikvold,* 688 P.2d at 174; *accord Toussaint,* 292 N.W.2d at 895. We therefore conclude that the disclaimer contained in the 1978 manual does not prevent the provisions of the manual from becoming part of, and thus modifying, Jones' at-will employment agreement with LHHS.

█ This holding in turn requires reversal of the superior court's grant of summary judgment to CPGH and LHHS. As not-

---

3. *See also Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081, 1088 (1984).

4. The 1978 manual, under the heading of "policies," in part discusses such topics as probationary periods of employment, grievance and arbitration procedures, promotions, transfers, compensation, leave, voluntary resignations, involuntary terminations, and terminations for cause. Under the heading of "rules," the manual addresses such matters as physical examinations of employees, professional conduct required of employees, smoking, employee appearance, theft and fraud, punctuality, attendance, and hours worked.

The manual also contains a definition section which in part provides definitions of the terms

"rule" and "policy." Rules and policies are "adopted and followed by management," and are to be applied consistently and uniformly.

5. In part the manual reads as follows:

The following acts are among those that may result in termination for cause:

(a) willful violation of a reasonable policy or rule or regulation;

(b) disregard of, or failure to carry out instructions;

. . . .

(d) failure to perform assigned work as scheduled or requested after two warnings;

. . . . .

ed above, a probationary employee of LHHS and CPGH may be terminated without cause. On the other hand the 1978 manual provides that non-probationary employees can only be terminated for cause. At the time of her termination Jones had been employed well beyond the applicable probationary period.

At the outset of this opinion we noted that Jones advanced claims in her complaint for compensatory and punitive damages based on her alleged wrongful termination. LHHS's 1978 personnel manual, which was furnished to all employees, contained the representation that no involuntary termination would occur without cause. In this circumstance it is well-recognized that where an employer represents that termination will only occur for cause, the employer must comply or be liable for damages. *Toussaint*, 292 N.W.2d at 892; *see also Rutledge*, 727 P.2d at 1056.

Jones was terminable only for cause. The question of whether Jones was discharged for good cause, or whether she "was really discharged for another reason ... is one ... for the [trier of fact]." *Toussaint*, 292 N.W.2d at 896. Since there has been no conclusive determination as to whether Jones was terminated for good cause, and genuine issues of material fact preclude resolution of this issue by summary judgment, we must reverse the superior court's grant of summary judgment in favor of LHHS and CPGH and remand this matter for further proceedings.

### IV. DID THE SUPERIOR COURT IMPROPERLY GRANT SUMMARY JUDGMENT TO LHHS AND CPGH ON JONES' CLAIM THAT SHE WAS TERMINATED IN VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING?

■ In *Mitford v. de Lasala*, 666 P.2d 1000, 1006–07 (Alaska 1983), this court rec-

ognized an implied covenant of good faith and fair dealing in all at-will employment contracts. This covenant does not lend itself to precise definition, but it requires at a minimum that an employer not impair the right of an employee to receive the benefits of the employment agreement. *Id.* at 1006–07.[6] In her complaint Jones alleged a breach of this covenant by virtue of the failure of LHHS and CPGH to permit her to grieve her termination. In this appeal Jones specifies as error the superior court's holding that the covenant was not violated. The superior court held that the covenant was not violated because Jones was a supervisor, and the grievance procedures provided for in the 1978 manual only applied to non-supervisory personnel.

■ We hold that summary judgment was appropriate as to this claim. Review of the record persuades us that there is no genuine issue of material fact regarding Jones' status as a supervisor. The 1978 manual clearly excludes supervisory personnel from grievance procedures. Thus, Jones has not been denied any benefit of her employment agreement. Therefore, the superior court properly concluded on summary judgment that LHHS and CPGH did not violate the implied covenant of good faith and fair dealing.

### V. DID THE SUPERIOR COURT IMPROPERLY GRANT SUMMARY JUDGMENT TO McILWAINE ON THE DEFAMATION CLAIM?

■ Jones alleges that McIlwaine, former Director of Nurses of CPGH, defamed her by "stating in writing and placing said writing in [her] personnel file that [Jones] was emotionally unstable and in desperate need of help." McIlwaine wrote that Jones was "paranoid," on the verge of a "breakdown," and in need of "help and fast." LHHS responds that McIlwaine's comments are conditionally privileged due to her employment relationship with Jones.

---

6. This covenant also requires that an employer treat like employees alike. *See Rutledge v. Alyeska Pipeline Serv. Co.*, 727 P.2d 1050, 1056 (Alaska 1986) (citing *Rulon–Miller v. International Business Machs. Corp.*, 162 Cal.App.3d 241, 208 Cal.Rptr. 524, 529 (Cal.App.1984) (requiring that company rules and regulations be applied to employee), *limited on other grounds by Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373, 392–94 (1988)).

In *Schneider v. Pay 'N Save Corp.*, 723 P.2d 619, 623–24 (Alaska 1986), we recognized a conditional privilege for publication of defamatory material based on an employer/employee relationship.[7] According to the Restatement (Second) of Torts § 595 (1977):

(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the recipient or a third person, and

(b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

McIlwaine's statements, published only in the personnel file, fulfill the requirements of section 595. The information relating to Jones affected a "sufficiently important" employer interest to justify its transmittal to LHHS. Further, as the supervisor directly responsible for Jones, McIlwaine had a duty to report her concerns about Jones' perceived emotional problems to LHHS.

Even if a conditional privilege is found to exist, the party asserting it may be held liable for damages caused by defamatory statements where the plaintiff proves that the privilege was abused. In *Schneider* we adopted the Restatement's four bases for determining whether a speaker or writer has abused a conditional privilege.

[A] conditional privilege may be abused because of:

the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter ...; because the defamatory matter is published for some purpose other than that for which the particular privilege is given ...; because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege ...; or because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged. Restatement (Second) of Torts § 599 comment a (1977). 723 P.2d at 624–25.

▪ Whether McIlwaine abused the conditional privilege is normally "a question of fact for the jury unless the facts are such that only one conclusion can be drawn." *Id.* at 624 (citation omitted). The superior court found that Jones had failed to show that the privilege was abused.[8]

In our view the superior court's grant of summary judgment in McIlwaine's favor should be sustained. McIlwaine testified that she believed all of her statements about Jones to be true. She did not publish them for any "purpose other than that for which the particular privilege is given." Each of the statements was made in her capacity as Director of Nurses, with regard to the performance of one of her nurses. Additionally, McIlwaine did not publish the statements beyond what was necessary, i.e., beyond placing them in Jones' personnel file. Finally there is no indication that McIlwaine included "defamatory matter not reasonably believed to be necessary to accomplish the purpose" of supervising Jones and keeping LHHS informed of her

7. The Restatement (Second) of Torts § 593 (1977) states:
One who publishes defamatory matter concerning another is not liable for the publication if:
(a) the matter is published upon an occasion that makes it conditionally privileged and
(b) the privilege is not abused.

8. In regard to the defamation issue, in granting summary judgment to McIlwaine the superior court stated:

As to *Nancy McIlwaine* any publication of material which could be considered derogatory to plaintiff was conditionally privileged. These were notes and observations made in the course of McIlwaine's duties as a nurses supervisor. Plaintiff, Marge Jones, had the duty to show the privilege was abused and has failed to do so, *Schneider v. Pay'N Save Corp.*, 723 P.2d 619 (Alaska 1986). For the same reasons there was no unlawful interference by McIlwaine with Jones' contract rights.

ability to care for patients and otherwise perform her duties.

## VI. WERE THE CLAIMS ASSERTED AGAINST INDIVIDUAL DEFENDANTS CHRISS HUSS, SIMON HANCOCK, AND GLEN BENSON PROPERLY DISMISSED?

Jones' claims against Huss, Hancock, and Benson were dismissed by the superior court. A claim should not be dismissed unless it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Shooshanian v. Wagner*, 672 P.2d 455, 461 (Alaska 1983).

Huss, Hancock, and Benson were all employees of LHHS at the time of Jones' termination. Huss was Director of Nurses, Hancock was Hospital Administrator, and Benson was an LHHS corporate official. In her complaint Jones states that "Huss and ... Hancock were acting as agents of [LHHS]" and that "Benson [was] an employee of [LHHS] ... acting as the Alaska Regional Director." She argues that dismissal of the claims against them was improper because a jury could find that they acted in bad faith or beyond the scope of their authority by terminating her in violation of the personnel manual. The superior court dismissed Jones' complaint against these individuals on the rationale that "No liability of agents attaches when the principals CPGH and LHHS are not liable."

We hold that the claims asserted against Huss, Hancock and Benson were properly dismissed. Generally, an employee cannot be held liable for the breach of a contract between the employer and another party. As Huss, Hancock, and Benson were not parties to the employment contract between CPGH and Jones, they cannot be held liable for any breach that may have occurred.[9]  *Clay v. Advanced Computer Applications*, 370 Pa.Super. 497, 536 A.2d 1375, 1384 (1988), *rev'd in part on other grounds*, —— Pa. ——, 559 A.2d 917, 918 (1989). While an employee not party to an employment contract may be held liable for damage caused by independently tortious or malicious acts, no such allegations are made in this case.[10]  Therefore, we must affirm the superior court's dismissal of Jones' claims against Huss, Hancock, and Benson.

REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings not inconsistent with this opinion.[11]

**9.** *See also Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 972 (2d Cir.1987) (agent who acts on contract on behalf of principal not liable for breach absent clear intention by agent to be bound by contract—but agent may be held liable for own tortious acts); *New York v. Ocean Club, Inc.*, 602 F.Supp. 489, 494 n. 5 (E.D.N.Y. 1984) (agent acting within scope of authority not liable for breaching contract between principal and third party).

**10.** *See Ransom v. Haner*, 362 P.2d 282, 287 (Alaska 1961) (employee may directly sue co-employee for latter's negligence); *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025, 1043 (1985) (supervisor may be held personally liable for interfering with employee contract if acted with improper motive); *Welch v. Bancorp Management Servs., Inc.*, 296 Or.

208, 675 P.2d 172, 177–79 (1983) (co-employee may be held liable for acting with malice to cause wrongful discharge); *McElroy v. Wilson*, 143 Ga.App. 893, 240 S.E.2d 155, 157 (1977) (co-employee may be held liable for maliciously and unlawfully persuading employer to breach employment contract with plaintiff).

**11.** The award of attorney's fees in favor of CPGH and LHHS is vacated. An appropriate award may be made on remand in favor of the remaining prevailing defendants. The superior court awarded the defendants $18,000 of the $30,077 in attorney's fees incurred. Jones does not dispute that these fees have in fact been incurred. We hold that on remand the superior court may exercise its discretion in making an award similarly proportionate to the fees incurred by the prevailing defendants.