972 F.2d 1341
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William L. PATTERSON, Plaintiff-Appellant,
v.
K & L DISTRIBUTORS, INC., individually and severally, and
its agents; John Fullington; Neil Stoll; Bob Deland,
International Brotherhood of Teamsters Local 959,
individually and severally, Defendants-Appellees.
 No. 91-35609.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 18, 1992.*
Decided Aug. 26, 1992.
 
 Before HUG, D.W. NELSON and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 William Patterson, a union member, brought suit against his former employer K & L Distributors, employees Fullington, Stoll and Deland,[1] and his union ("the Local"), following his termination by K & L with a designation that he was ineligible to be rehired. The district court read Patterson's pro se complaint, the affidavits, and other materials to state claims against the employer and its employees for wrongful discharge in violation of a collective bargaining agreement, against the Local for breach of the duty of fair representation,[2] and against all the defendants for defamation. The court granted summary judgment for the defendants on all claims. Patterson appeals the grant of summary judgment on the claim for defamation and contends that the district court erred in failing to recognize additional claims for intentional interference with prospective economic advantage and intentional interference with contractual relations. We affirm.
 
 Standard of Review
 
 3
 An order granting summary judgment is reviewed de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). In reviewing a grant of summary judgment, we determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 Discussion
 1. Defamation
 
 4
 The district court granted summary judgment for the defendants on the claim of defamation, finding that Patterson had failed to establish a prima facie case or, in the alternative, that if any defamatory statements had been made, those statements were conditionally privileged. Patterson contends that summary judgment was improper because the defendants abused any privilege they had and because the court declined to draw inferences in his favor tending to show that the defamatory statements were not true.
 
 
 5
 We agree that any defamatory publication of information in Patterson's employment file at K & L was privileged. In Schneider v. Pay'N Save Corp., 723 P.2d 619 (Alaska 1986), the Alaska Supreme Court adopted several sections of the Restatement (Second) of Torts defining the circumstances under which defamatory publication is conditionally privileged and when the privilege is abused.[3] A defamatory statement may be conditionally privileged if " 'the circumstances induce a correct or reasonable belief [on the part of the publisher] that (a) there is information that affects a sufficiently important interest of the recipient or third person, and (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.' " Id. at 623 (quoting Restatement (Second) of Torts § 595 (1977)). The employment relationship is one for which the conditional privilege exists absent a showing of abuse. Schneider, 723 P.2d at 624; Jones v. Central Peninsula Gen. Hosp., 779 P.2d 783, 790 (Alaska 1989) (holding that allegedly defamatory statements placed by a supervisor in an employee's personnel file were conditionally privileged).
 
 
 6
 In the instant case, Patterson alleges that K & L employees John Fullington and Neil Stoll knowingly incorporated into his employee records "libelous and defamatory" remarks and evaluations by fellow employees and references from previous employers which formed the basis of his dismissal and "no rehire" status. Publication by K & L employees of bad references and evaluations from former employers and peers in Patterson's personnel file is conditionally privileged because such publication affects an important interest of K & L, namely the decision whether to terminate and rehire an employee. Therefore, any allegedly defamatory material Stoll or Fullington incorporated into K & L's employee record is privileged absent a showing by Patterson of abuse. Jones, 779 P.2d at 790.
 
 
 7
 Any communication by K & L of defamatory statements about Patterson to the Local is likewise privileged. Communication of such information during Local representative Conyers' investigation of the reasons for Patterson's termination affected an important interest of the Local, that is the determination of whether to pursue a grievance on Patterson's behalf. It also affected an important interest of K & L, that of establishing to the Local's satisfaction that Patterson had been discharged for just cause. Furthermore, any information communicated by K & L about Patterson's discharge was offered in the context of Patterson's request that the Local investigate his termination. Under the collective bargaining agreement ("CBA"), K & L had a duty to report to the Local the fact of and reasons for Patterson's discharge.
 
 
 8
 We must next consider whether Patterson has made a showing of abuse. In Schneider, the Alaska Supreme Court indicated that "the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter" would constitute abuse. 723 P.2d at 624. The existence of abuse is generally a question for the jury "unless the facts are such that only one conclusion can be drawn." Id. Here, there is no genuine issue as to whether the privilege was abused.
 
 
 9
 Patterson asserts that the privilege was abused because K & L and its agents incorporated into his personnel file and communicated to future employers defamatory statements by fellow employees and previous employers that the defendants knew to be untrue. He contends that the Local joined in the defamation by not exposing as wrongful the reasons given for Patterson's termination, which the Local knew were false. Yet Patterson has not adduced any evidence that defendants knew the allegedly defamatory statements were false.
 
 
 10
 Patterson relies for support on K & L employee Terry Leabhart's affidavit in which he states that he interviewed three employees, including Patterson's day foreman Delaney, who were satisfied with Patterson's work performance and attitude and believed he was wrongly discharged. Patterson argues that the opinions of these employees establish that the defendants knew that the reasons given by K & L and accepted by the Local for his discharge were false, especially since Delaney was also interviewed by Conyers.[4] Although Leabhart's affidavit suggests that some people at K & L disagreed with Patterson's discharge, it does not create a genuine issue as to whether the defendants knew that the alleged poor references and evaluations from peers, supervisors and former employers were false, or indeed, that the references and evaluations were false.
 
 
 11
 As for communication by K & L, its employees or the Local of defamatory matter to subsequent employers, Patterson has simply not provided any evidence to support his allegation that any defamatory information was conveyed. He alleges only that he was defamed by the defendants' communication to subsequent employers of K & L's "no rehire" recommendation. The "no rehire" restriction was true. Patterson has adduced no evidence to show that any information other than the "no rehire" status was communicated by any defendant to a subsequent employer.[5] Summary judgment was properly granted for the defendants on Patterson's defamation claim.
 
 
 12
 3. Claims for Interference with Contractual Relations and Interference with Prospective Economic Advantage
 
 
 13
 A plaintiff is required to provide the defendant with fair notice of a claim and the grounds on which it rests. Conley v. Gibson, 355 U.S. 41, 47 (1957); see also Fed.R.Civ.P. 8(a). In addition, the rule is well established that a pro se plaintiff's complaint should be construed liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir.1985).
 
 
 14
 Patterson asserts that his complaint, broadly construed, and taken together with the evidence he has adduced in his affidavits and deposition, gave the defendants notice of claims for intentional interference with contractual relations and intentional interference with prospective economic advantage. We need not decide whether Patterson's complaint gave adequate notice of these claims. Even if it did, Patterson has failed to establish a genuine issue of material fact with respect to these claims.
 
 
 15
 Patterson's claim of interference with contractual relations is preempted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988), because it depends on interpretation of the collective bargaining agreement. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 403-06 (1988); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210 (1985); Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 999 (9th Cir.1987). The test for preemption is whether there exist non-negotiable state-law rights independent of any right established by contract or whether, instead, "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers Corp., 471 U.S. at 213; Young, 830 F.2d at 999.
 
 
 16
 Under Alaska law, the tort of intentional interference with contractual relations includes as one element proof that a contract was breached. Knight v. American Guard & Alert, Inc., 714 P.2d 788, 793 (Alaska 1986). Proving this element would necessarily involve interpretation of the CBA, since the CBA is the contract for purposes of interference with Patterson's contractual relations with K & L. The state-law claim is therefore "inextricably intertwined with consideration of the terms" of the CBA and, as such, is preempted by section 301.
 
 
 17
 Patterson also contends that he adequately pleaded a claim for intentional interference with prospective economic advantage and that the district court failed to draw in his favor inferences from evidence in the record indicating that the defendants intended to interfere with "his ability to ever again obtain like work within the State of Alaska." We disagree.
 
 
 18
 In Ellis v. City of Valdez, 686 P.2d 700 (Alaska 1984), the Alaska Supreme Court defined the tort of intentional interference with prospective economic advantage: "Under this theory a person who is involved in an economic relation with another or who is pursuing reasonable and legitimate prospects of entering such a relationship, is protected from a third person's wrongful conduct which is intended to disrupt the relationship." Id. at 707 (emphasis added). The court subsequently clarified that a plaintiff must "allege some definite, specific, or knowing intent" by a third party to do harm to the plaintiff's prospective economic advantage in order to state a cause of action." Mattingly v. Sheldon Jackson College, 743 P.2d 356, 363 (Alaska 1987).
 
 
 19
 Patterson has failed to allege facts that indicate any intent by the defendants to interfere with his prospective employment with K & L or Lynden Transport Co. There is no evidence that K & L intended to disrupt Patterson's prospective employment with Lynden by communicating the fact that Patterson was ineligible to be rehired at K & L. The record shows, and Patterson does not dispute, that K & L did not volunteer the information, but rather that it was released with Patterson's authorization pursuant to Lynden's request for references from previous employers. In addition, Patterson has not produced evidence that anything other than his "no rehire" status was communicated to Lynden.[6] Furthermore, there is no evidence whatsoever that the Local communicated to any employer Patterson's ineligibility to be rehired at K & L or any other information.[7]
 
 
 20
 The district court's grant of summary judgment is
 
 
 21
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Patterson has not appealed the grant of summary judgment for defendant Deland
 
 
 [2]
 Patterson does not appeal the grant of summary judgment on claims for wrongful discharge in violation of a collective bargaining agreement or breach of the duty of fair representation
 
 
 [3]
 " 'One who publishes defamatory matter concerning another is not liable for the publication if: (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused.' " Id. at 623 (quoting Restatement (Second) of Torts § 593 (1977))
 
 
 [4]
 Local business agent Conyers concluded that Patterson had been terminated for just cause because of "poor work habits, poor work production, lack of compatibility with co-workers, insubordination with the night foreman, and poor references from fellow employees." During his investigation he interviewed defendants Deland (Patterson's night foreman) and Fullington as well as Delaney
 
 
 [5]
 Patterson has also not established a genuine issue of fact as to whether he was defamed by the communication to prospective employers of his ineligibility to be rehired at K & L. The Alaska Supreme Court has held that "[t]he assertion that one had been fired from his employment is not defamatory per se, i.e., as a matter of law." Fairbanks Publishing Co. v. Pitka, 445 P.2d 685, 689 (Alaska 1968). The court stated that publication of the fact that the employee was fired, even though she had actually resigned, was not defamatory, since it is natural to expect an employee to be fired where a dispute exists with an employer and one would not ordinarily think ill of the employee on hearing that she was fired under such circumstances. Id. We conclude that Fairbanks governs our consideration of the issue here. If releasing erroneous information that an employee has been fired is not per se defamatory, then it is difficult for us to imagine how releasing true information that a company does not intend to rehire an employee is defamatory under these circumstances
 
 
 [6]
 Patterson also points to the alleged inconsistency between his lay-off notice "due to lack of work" from Universal Transportation Systems ("UTS"), where he worked after his discharge from K & L, and UTS's communication to Lynden, pursuant to a request for work references, that Patterson was ineligible for rehire at UTS. From the fact that his lay-off notice did not contain his "no rehire" designation, Patterson infers that "one or more of the defendants" somehow caused UTS to change his employment status in an effort to blackball him and drive him out of Alaska. However, Patterson does not state which of the defendants might have engineered this alleged "change" and has not produced any evidence that his ineligibility to be rehired was inconsistent with the lay-off notice
 
 
 [7]
 Nor does Patterson's allegation that the Local violated his rights to hiring hall procedures by refusing to dispatch him to jobs at K & L state a claim for intentional interference with prospective economic advantage. Because K & L had designated him ineligible to be rehired, Patterson had no "legitimate prospects of entering" an advantageous economic relationship with K & L. See Mattingly, 743 P.2d at 363. Furthermore, the Local continued to dispatch him for work with employers who had not designated him ineligible for rehire. Therefore, Patterson has failed to create a genuine issue of material fact on his claim